# EXHIBIT 3

STATE OF CALIFORNIA
CDC 174 (3/87)

DEPARTMENT OF CORRECTIONS

# PROBATION OFFICER'S REPORT

To the Department of Corrections
(Submitted in accordance with Section 1203c of the Penal Code)

NAME ___GERARDO JERRY MENCHACA___     ALIAS _____

COUNTY ___Santa Clara___     COUNTY CLERK NUMBER ___#148873___

CONVICTED OFFENSE ___(See Attached)___

Pursuant to Section 1203c of the Penal Code, as amended effective September 23, 1963, the Administrator of the Youth and Adult Corrections Agency has prescribed the form of the Probation Officer's report which shall accompany the commitment papers of persons committed to an institution under the jurisdiction of the Department of Corrections.

This sheet, with the identifying data as indicated above, may serve as a transmittal letter or a copy of the Probation Officer's report prepared either before or subsequent to sentence. Copies are available upon request to this department.

The information requested in paragraphs I, II, III, and IV below is prescribed as necessary for the proper evaluation of inmates. Most of this information is included in the usual Probation Officer's report. Therefore, to prevent the necessity of preparing a separate report on those cases committed to the custody of the Director of Corrections, the form prescribed shall consist of the report as prepared by the Probation Officer in the regular course of his/her investigation and as subject to the rules and policies of his/her department and the prerogatives of the respective courts. Important data not included in the Probation Officer's report may be added as an attachment to this sheet.

There are limited exceptions requiring only a report upon circumstances of the offense and/or the prior record and history of the defendant as prepared by the Probation Officer at request of the court and filed with the court before judgment. These are:

a. Case ineligible for probation. (Sec. 1203c P.C.)

b. Cases committed under non-criminal narcotic addict proceedings. (Sec. 6500 P.C.)

Other exceptions are:

a. Cases or offenses by defendants who are already under commitment to the Director of Corrections, either in an institution or on parole or at large as an escapee. Such reports may be limited to circumstances of any new offense and available data of activities while at large, if an escapee.

b. Those cases where time limitations and lack of resource material prohibit detailed reports. Such limitations should be indicated under the appropriate headings.

Factual information is a prime requirement. Succinct and selective reporting is preferred. Indicate the source of information and extent to which it is substantiated. Guidelines on the data to be included are given in paragraphs I, II, III, and IV.

IN THE SUPERIOR COURT OF THE

STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) | |
| PLAINTIFF, | ) | REPORT OF |
| | ) | PROBATION OFFICER |
| vs. | ) | |
| | ) | No.: 148873 |
| | ) | February 7, 1992 |
| GERARDO JERRY MENCHACA, | ) | D. Carr, D.A. |
| | ) | J. Vaughn, P.D. |
| DEFENDANT, | ) | |
| | ) | |

## COURT DATA

SENTENCING COURT:    Honorable James H. Chang

COURT OF CONVICTION:  Honorable James H. Chang

CHARGE:  Count One, Section 187 of the Penal Code (Second Degree Murder)

With One Prior Felony Conviction of Section 11378.5 of the Health and Safety Code (Possession of Phencyclidine for Sale), within the meaning of Section 667.5(b) of the Penal Code (Prison Prior)

DATE OF OFFENSE: March 2, 1991

DATE OF ARREST:  June 1, 1991 (SJPD)

CONVICTION: Found Guilty by Jury Trial on January 8, 1992 and admitted Prior Felony Conviction on December 11, 1991

CONDITIONS:  None

REMAINING CHARGES:  None

DAYS IN CUSTODY:  252 actual days, 126 days - 4019 PC, 378 total days; presently in custody

AGE & DATE OF BIRTH:  27; July 10, 1964; Crystal City, TX

CODEFENDANTS & STATUS:

On January 7, 1992, Hector Arturo Oropeza was found guilty by Jury Trial of Second Degree Murder.  Sentencing has been scheduled for February 7, 1992, in this same Court (Info. No. 148873).

in the Case of:  GERAR · MENCHACA
Charge:          Sec. 187 PC
Information No.: _____ 148873                February 7, 1992

SUMMARY OF OFFENSE:

The Court has already seen evidence, and heard testimony
regarding the circumstances of the instant offense. As such, a
short synopsis of the offense will be presented.

The factual data contained in this summary was derived from
transcript of the Preliminary Examination of July 16, 1991, and
San Jose Police Department Investigation Report No. 91-061-0177.

On March 1, 1991, at approximately 10:00 p.m., Jerry Menchaca,
Hector Oropeza and another friend went bowling. They apparently
bowled, while consuming beer, until approximately 1:45. Their
friend then drove them back to his house, where Menchaca and
Oropeza then entered Menchaca's 1978 silver Honda Civic, and
reportedly began to drive towards Oropeza's home. During this
same time period, victim Richard Figueroa, age 33, and his
brother Dennis went to the Cardinal Bar where they consumed
alcohol and socialized with friends. While at the bar, Richard
Figueroa invited one of the cocktail waitresses, Susan Douglass,
to join him, his brother, and two others, Brenda Butler, age 28,
and Gus Tuomi, age 26. After the bar had closed, Butler, Tuomi,
and Dennis Figueroa left in Butler's vehicle to drive to Butler's
condominium where she was going to make breakfast. Richard
Figueroa went as a passenger with Douglass, who was driving her
own vehicle.

While eastbound on Capitol Expressway, Butler's vehicle and
Menchaca's vehicle apparently came alongside each other.
Menchaca later reported to police that he believed at the time he
recognized one of the males in Butler's vehicle as an individual
with whom he had previously had problems. Testimony in this case
also indicates that there may have been some type of near-miss
accident caused by Menchaca. What did happen, however, was that
words and gestures were exchanged between the occupants of both
vehicles. Menchaca then began to pursue Butler. Apparently,
while all this was being initiated, Douglass and Figueroa were
oblivious to the problem. Butler turned off at the cloverleaf at
Monterey Road, driving north on Monterey Road to Southside Drive.
Butler was driving towards her home, which was located off
Southside Drive at 175 Kenbrook Circle. While Butler was pulled
over, waiting for Douglass and Figueroa to catch up, Menchaca
pulled up next to Butler, and more words were exchanged between
occupants of both vehicles. When Douglass stopped behind
Butler's vehicle, Tuomi exited Butler's vehicle and ran back to
tell Douglass and Figueroa that they were having problems with
the occupants of the Honda. Butler quickly pulled away, chased
by Menchaca. Tuomi entered Douglass' vehicle. Douglass
proceeded in the direction that Butler and Menchaca had driven,
but did not see where they had gone. Butler meanwhile had hidden
by turning off her lights and stopping in a driveway. Menchaca

-2-

In the Case of:  GERAR... .. MENCHACA
Charge:              Sec. 187 PC
Information No.: _____ 148873                February 7, 1992

apparently lost sight of her.  As Douglass was driving up  the
street where Menchaca was  located, something was  thrown from
Menchaca's vehicle which hit Douglass' car.  She stopped to check
for damage.  Menchaca then pulled up next to her vehicle, and she
and Menchaca and Oropeza exchanged heated words.  Douglass  then
saw that Oropeza was  brandishing a large hunting-style  knife.
She returned to her vehicle and accelerated away, attempting  to
lose Menchaca and Oropeza.  Douglass returned to Monterey  Road,
turning right and accelerating.  A short distance away she made a
U-turn and drove  back to Southside  Drive, turning  left and
driving down to Butler's condominium complex at Kenbrook Circle.
It was the occupants of her vehicle's view at that time that they
had managed to elude Menchaca and  Oropeza.  Douglass parked in
one of the  visitor parking spots  near Butler's  condominium.
Figueroa exited the car, and  was reportedly in the process  of
moving the passenger seat forward  to allow Tuomi to exit  when
Menchaca pulled in behind Butler's vehicle, blocking it.  Oropeza
and Menchaca  both exited  their vehicle and rushed  towards
Figueora.  Douglass and Tuomi sat in her vehicle and watched  as
Figueroa was assaulted by Oropeza and Menchaca.  After a one  to
two minute flurry of blows,  Oropeza and Menchaca fled back  to
their vehicle and drove off, leaving Menchaca's red baseball cap
with the logo "San Jose  Bad Boys" laying under Douglass'  car,
where he had fallen during the assault.  Figueroa got back  into
Douglass' car.  Douglass then noticed that his white sweater had
many slit marks in it, and that Figueroa was bleeding.  Figueroa
then tried to get out of her car, but collapsed to the  asphalt.
Neighbors who had heard or witnessed  the assault had meanwhile
called 911 for  assistance.  Figueroa was  taken to  San Jose
Hospital Trauma Center by ambulance, where he died.

The autopsy report indicates that Figueroa received 23 wounds to
his body, 15 of which were actual stab wounds.  The others  were
lacerations or superficial incised  wounds.  Evidence indicated
the possibility of more than  one weapon having been used.  The
stab wounds  included four-and-a-half-inch  deep wounds  which
perforated Figueroa's chest and left lung, chest and right lung,
two stab wounds to his liver, one to his colon, and five to  his
intestines.  Cause of death  was listed as stab  wounds of the
head, chest,  and abdomen.  The report  also indicated  that
Figueroa received stab wounds to his left and right hands.

After committing  the  assault,  Menchaca  drove  Oropeza  to
Menchaca's brother's home.  Menchaca had been stabbed once in the
back.  Menchaca's sister-in-law overheard Oropeza state, "I think
I hurt you" referring to Menchaca's stab wound.  He also stated,
"I think I killed him" referring to someone else.  Menchaca  was
taken to the hospital, where  he remained for approximately  12
hours receiving emergency care for  his wound.  Doctors took  a
blood sample from Menchaca at  4:10 a.m. that morning.  It  was
later determined that Menchaca's blood/alcohol level was  0.12%.

In the Case of: GERARDO MENCHACA
Charge:          Sec. 187 PC
Information No.:            148873                    February 7, 1992

The hospital staff subsequently notified the San Jose Police
Department of the stabbing injury.

The police investigation ultimately led to Menchaca's arrest on
June 1, 1991. After he as placed into custody, his wife, Olga
Menchaca, contacted police. She stated that she confronted her
husband with a newspaper article regarding the incident a few
days after it had occurred, and that her husband, Jerry Menchaca,
broke down and told her of his involvement. He related to her
that he and Oropeza had been bowling earlier in the evening and
that they had been drinking beer. He was in the process of
driving Oropeza home when they ran into some guys with a girl in
the car. Menchaca told his wife that he had initially thought
that the guy was someone else that he didn't get along with and
that words and gestures were exchanged. Menchaca's wife also
reported that her husband had owned a red baseball cap with the
logo "San Jose Bad Boys" embroidered on the front, and that he
had been wearing that particular baseball cap the night of the
instant offense.

Officers interviewed Hector Oropeza on June 3, 1991, regarding
the incident. He fabricated a story that Menchaca had been
stabbed in the back alley of a bar called "The Place." He denied
any knowledge of the instant offense. He was subsequently booked
into County Jail for the murder of Richard Figueroa on June 7,
1991.


VICTIM'S STATEMENT:  (Appearance - Unknown)

Bud Charles Figueroa, the victim's father and Gary Figueroa, the
victim's brother, (addresses withheld, available in probation
file) have been notified of their victim rights pursuant to Sec.
1191.1 of the Penal Code. Mr. Gary Figueroa stated in a
telephone conversation that neither defendant was likely to
receive a severe enough punishment for causing the murder of
Richard Figueroa. He and his sons continue to anguish over the
loss of "Rick" as he was such a big part of all of their lives.
He has indicated that in addition to the letter which he has
already forwarded to the Court, other family members will be
submitting letters. To date, no response has been received from
Mr. Bud Figueroa. Should information be received prior to the
sentencing hearing, the information will be forwarded to the
Court.


DEFENDANT'S STATEMENT:  (Requested - Not Received)

The defendant is willing to admit that he was there, but he never
imagined that he would get convicted of Second Degree Murder. He
declined to discuss his actual involvement in the instant

-4-

In the Case of:  GERARDO MENCHACA
Charge:              Sec. 187 PC
Information No.:_____148873                    February 7, 1992

offense.  He did, however, state that nothing had been  planned,
and that he just acted out of stupidity.  He explained that both
he and Oropeza were drunk, and that they didn't really know what
was going on that night.

The defendant did agree  to discuss his employment  and health
record.  He reports that  he worked as a  landscaper from 1984
until he was sent  to prison in  1987.  After getting  out of
prison, he  immediately went  out and  got a  new job  doing
landscaping.  In June 1990 he found work as a roofer, earning $12
an hour, the most he has ever made for his labor.  The defendant
states that he worked regularly  as a roofer until arrested  on
June 1, 1991, for this present matter.

The defendant also discussed his use of  drugs and alcohol.  He
explained that he began using marijuana and  alcohol at age 13.
He describes alcohol  as becoming a  "problem" soon  after he
started drinking.  While he was  able to quit a  few times, he
always started again.  He also stated that he used PCP from  the
age of 16 until he quit in 1986, a four-year period.  At age  16
he began using cocaine,  a  drug from which he was  not able to
abstain.  His cocaine use continued, off and on, until his arrest
for this present matter.  The  defendant noted that it was  his
abuse of alcohol  on the night  of the instant  offense which
affected his thinking,  and led to  his participation  in the
instant offense.

The defendant is  requesting that the  Court go on  record as
stating that his term should be 16 years  to Life.  He does not
want to be sentenced to the one-year  commitment for the prison
prior, with a 15-year to Life consecutive sentence, as he  would
not be eligible  for parole as  soon this way.  He has  also
indicated that he will be requesting prison authorities house him
at Tracy, where they have good  programs, and he will be  close
enough to home for his family to visit.


INTERESTED PARTIES:

The defendant has one prior referral to the Probation Department.

---

| DATE | DKT #/<br>INFO # | CHARGE: | DISPOSITION: |
|------|---------|---------|--------------|
| 1/22/87 | 105477 | 11378.5 H&SC & | |
| | | 11351 H&SC | 3 yrs Prob; 1 yr CJ; |

tests, s/s, psych cnslg, no alc, enter/compl. CAPS, then rel. to
CJ

In the Case of:  GERARDO MENCHACA
Charge:          Sec. 187 PC
Information No.:         148873                February 7, 1992

The defendant violated probation by walking away from his
court-ordered drug program.  On June 22, 1988, probation was
revoked and the defendant was committed to three years State
Prison.

The defendant's parole agent, Ms. Adamson, has been contacted.
She reports that the defendant waived his right to a revocation
hearing for Violation of Parole.  The Board has set a one-year
sentence.  Circumstances of the parole revocation included the
instant offense, as well as his positive tests for cocaine on
April 21, 1991, and May 29, 1991.  The agent further reported
that the defendant had previously tested positive for the use of
cocaine on March 3, 1990, and August 26, 1990.  After testing
positive in August 1990, the defendant quit reporting to parole,
and moved without notifying the Parole Department.  The agent
subsequently learned that the defendant was no longer living with
his wife, but had moved in with a girlfriend.  He was arrested on
September 26, 1990, and returned to San Quentin to serve a 30-day
parole detoxification program.  He was subsequently released on
parole on October 25, 1990.  He had been maintaining regular
contact with the parole department, and had been working
regularly.  Except for his family problems and his two positive
tests for cocaine use, the defendant had been judged as doing
well on parole.  The agent was surprised to find out that the
defendant had involved himself in a murder, and had withheld
information as to receiving the stab wound to his own back.  The
defendant's maximum confinement on his present parole term
terminates November 24, 1993.


DISCUSSION:

Judicial Council Rules 414, 421 & 423:  (Attached)

Enhancements:

The defendant has admitted a prior felony conviction, within the
meaning of Section 667.5(b) of the Penal Code, and is therefore
subject to an additional one-year period of imprisonment.

Case Evaluation:

Appearing before the Court is 27-year-old Gerardo Menchaca,  who
was found guilty by Jury Trial, of Second Degree Murder, and who
has admitted a prison  prior.  The defendants  were apparently
drunk at the time of the instant offense.  Yet they were able to
carry on a long pursuit, identifying two different vehicles  and
following one into a condominium parking lot.  They then  exited
their vehicle and attacked the victim, delivering 23 stab wounds
which caused the death of Richard  Figueroa.  Sadly, the victim

-6-

In the Case of:  GERARDO MENCHACA
Charge:          Sec. 187 PC
Information No.:        148873                    February 7, 1992

was probably the least involved of any of the individuals in the
two vehicles chased by the defendants. His exit from the vehicle
just as the defendants arrived, seems to be the only reason he
was the one chosen to be attacked and stabbed.

The defendant has a history of alcohol and cocaine use. While he
has had an opportunity to participate in substance abuse programs
in the past, he has continued to abuse alcohol, and to use
illicit drugs. The defendant's criminal record dates back to a
1980 commitment to the Youth Authority through the Juvenile Court
for Second Degree Burglary and Ranch Escape. As an adult, he
received his first criminal conviction in 1984 for being Under
the Influence of a Controlled Substance. Eight months later in
July 1985 the defendant was arrested for Possession for Sale of
PCP and Possession for Sale of Cocaine. The defendant received a
one-year County Jail commitment, and was placed on three years
probation. On June 2, 1988, probation was revoked and the
defendant was sentenced to three years State Prison.
The basis of his probation violation was the defendant's
"walkaway" from his court-ordered drug program. Unfortunately,
after being released on parole, the defendant continued with his
substance abuse, and "walkaway" behavior, failing to regularly
report to his parole agent. In September 1990 he was returned to
State Prison for a 30-day detoxification program. Parole testing
has confirmed that upon release from this program, the defendant
continued to use cocaine through the date of the instant offense.

While the defendant is statutorily eligible for probation, in
view of the violent nature of his offense, and the senselessness
of the murder, the denial of probation is being recommended. The
defendant maintains that he should not be held responsible for
the murder of Richard Figueroa. The defendant, however, was the
instigator of the initial problems with the other vehicles. He
then pursued these vehicles, providing himself and Oropeza with
the opportunity to commit the assault. The defendant then
physically assaulted the victim and is at a minimum, vicariously
responsible for the fatal injuries to Richard Figueroa. It is
respectfully recommended that the Court sentence the defendant to
a 16-year to Life State Prison commitment.

In the Case of:  GERARDO MENCHACA
Charge:          Sec. 187 PC
Information No.: _____ 148873                    February 7, 1992


SUGGESTED TERM:

| CRIME | MIT | AGG | RANGE | ENHANCEMENT | TOTAL TERM |
|-------|-----|-----|-------|-------------|------------|
| Ct. 1, 187 PC | N/A | N/A | 15 YR TO LIFE | 1 yr c/s (667.5(b) PC) | |

TOTAL TERM:   16 YEARS TO LIFE

In the Case of: GERARDO MENCHACA
Charge:          Sec. 187 PC
Information No.: _____ 148873          February 7, 1992


RECOMMENDATION:

1.  Probation be denied.

2.  The defendant be committed to the California Department of
    Corrections for sixteen (16) years to Life.

3.  The defendant be advised of a Parole period of from five (5)
    years to Life.

4.  Restitution as determined by the Court.

5.  A Restitution Fine of not more than $10,000.00 be imposed
    pursuant to Section 13967 of the Government Code.

NOTE:  Attorney Fees if appropriate

                                Respectfully submitted,

                                ANN CLARKE, Acting Chief
                                Probation Officer

                                _Randy Richards (5 Jwt)_
                                Randy Richards, Deputy
                                Probation Officer

RR/cmg
Attachments

Reviewed by:


_James W. Grubbs_
James W. Grubbs
Supervising Probation
Officer - Ext. 2137


The above report has been read and considered by the Court.


                                JAMES H. CHANG
                                Judge of the Superior Court
                                Santa Clara County, California


                                -9-

# EXHIBIT 4

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| D-87412 | MENCHACA | | | CSP-S.Q. | N-4-089 | 03-05-NB-01-00? |
| VIOLATED RULE NO(S). | SPECIFIC ACTS | Possession of | | LOCATION | DATE | TIME |
| CCR§ 3016 (b) | | a Controlled Substance | | | 01-05-05 | |

CIRCUMSTANCES

On Wednesday, January 05, 2005, laboratory results were received from National Toxicology Laboratories, which indicated a positive reading in the urine sample, collected from inmate MENCHACA, D-87412, housed in N-4-089 for (METH) Methamphetamine. This sample was collected from inmate MENCHACA, per CCR section 3290 (c) on Monday, December 27, 2004, on the basis of drug paraphernalia being found in the immediate area in front of your (MENCHACA) cell. Upon confirmation with Pharmacist M. Mason of San Quentin Pharmacy, it is determined that inmate MENCHACA is not on any medication that would test positive for Methamphetamine. Based on this positive laboratory result, inmate MENCHACA is being issued this CDC-115 for violation of CCR, Section 3016, possession of Methamphetamine. As per section 3290 (f) this CDC-115 is being issued for possession of a controlled substance based on the positive test being confirmed by National Toxicology Laboratories. Inmate MENCHACA is NOT a participant in the Mental Health Delivery System as of the date and is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ D. Mullen, Correctional Officer | | 01-05-05 | Pos. 476 | S/M |
| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
| ▶ R. Praid, Corr. Sergeant | | 1-8-05 | | M/T |
| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | | | | DATE | LOC. | HEARING REFERRED TO |
| ☐ ADMINISTRATIVE | B | 1-8-05 | ▶ M. Taylor, Corr. Lieutenant | | | ☐ HO ☒ SHO ☐ SC ☐ FC |
| ☒ SERIOUS | | | | | |

| COPIES GIVEN INMATE BEFORE HEARING | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | DATE | TIME |
| | ▶ C. Grace /0 | 1-4-05 | 1100 | ▶ 2/T | | | |
| ☒ INCIDENT REPORT | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | | DATE | TIME |
| LOG NUMBER: SP-D05-05-01 -017 | ▶ C. Grace /0 | 1-4-05 | 1100 | ▶ | | | |

HEARING

SEE CDC 115 PART C HEARING CONTINUATION

2005 FEB 18 AM 6:29

| REFERRED TO ☐ CLASSIFICATION | ☐ BPT/NAEA | | | | | | |
|---|---|---|---|---|---|---|---|
| ACTION BY: (TYPED NAME) | | | SIGNATURE | | | DATE | TIME |
| C.P. Young, Correctional Lieutenant | | | ▶ | | | 2-6-05 | 15 |
| REVIEWED BY: (SIGNATURE) | | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | | | DATE | TIME |
| ▶ K.J. Williams, Facility Captain | | 2-14-05 | ▶ D. Sazanay A.W. Unit III | | | 2/16/05 | |
| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | BY: (STAFF'S SIGNATURE) | | | | DATE | TIME |
| | | ▶ C. Grace /0 | | | | 2-18-05 | 30 |

CDC 115 (7/88)

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE __1__ OF __4__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| D-87421 | MENCHACA | 03-05-NB-01-002 | CSP-SQ | 02/06/05 |

| [X] SUPPLEMENTAL | [X] CONTINUATION OF: | [ ] 115 CIRCUMSTANCES | [X] HEARING | [ ] IE REPORT | [ ] OTHER_____ |
|---|---|---|---|---|---|

**Hearing:** Inmate Menchaca, D-87421, appeared before Senior Hearing Officer, C.P. Young, Correctional Lieutenant on Sunday, February 06, 2005, for adjudication of a Division "B" rule violation report.

Inmate Menchaca stated that he was in good health, acknowledged receipt of all reports to be used in evidence, and that he was ready to proceed with the hearing. The purpose of this hearing was explained to inmate Menchaca, and he stated that he understood.

A copy of all reports to be used in evidence were issued to the inmate more than 24 hours prior to the hearing. The following documentation was reviewed by this SHO and received by inmate Menchaca: CDC-115 (Log #03-05-NB-01-002); CDC-837 Crime Incident Report (Log #SQP-003-05-01-0027)

**Due Process:** Inmate Menchaca is not a participant in the Mental Health Services Program.

This Rule Violation Report was served to the inmate within 15 days of discovery and the hearing was held within 30 days of service. Time constraints have been met.

A Staff Assistant was deemed not to be necessary per CCR Title 15, §3315(d)(2).

An Investigative Employee was deemed not to be necessary per CCR Title 15, §3315(d)(1). Inmate Menchaca requested the assignment of an I.E., and when this SHO asked Menchaca what was the purpose of such an assignment, he stated he wanted an I.E. to ask Correctional Officer M. Pillacelli questions concerning a confidential informant/information. This SHO denied the request, and informed inmate Menchaca that he could ask such questions of Officer Pillacelli directly if he chooses to call him as a witness.

**PLEA:** The charges were read aloud to Inmate Menchaca. He acknowledged that he understood the charges, and pleaded **Not Guilty** and made no statement.

**Witnesses:** Inmate Menchaca requested the following staff to be present at the hearing as witnesses: Correctional Officer M. Pillacelli, Correctional Officer P. Lelis, and Correctional Officer B. Gonzales. Inmate Menchaca requested the following inmates: Butler, Y-84118, and Andrade, V-15736.

These staff and inmates were granted for the purposes of providing pertinent information to the hearing. The hearing was postponed pending availability of these persons. Prior to reconvening, the hearing, this SHO discovered that inmate Butler had paroled on the date of 02/05/05, and inmate Andrade had paroled on the date of 01/13/05; thus barring their participation in the hearing.

                    SEE CDC 115 PART C HEARING CONTINUATION

| SIGNATURE OF WRITER<br>C.P. Young, Correctional Lieutenant | DATE SIGNED<br>2/6/05 |
|---|---|
| [X] COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED<br>2-18-05 | TIME SIGNED<br>1300 |

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE 2 OF 4

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| D-87421 | MENCHACA | 03-05-NB-01-002 | CSP-SQ | 02/06/05 |

[X] SUPPLEMENTAL  [X] CONTINUATION OF: [ ] 115 CIRCUMSTANCES  [X] HEARING  [ ] IE REPORT  [ ] OTHER_____

On February 07, 2005, the requested staff were available and the hearing was reconvened. Officer Gonzales was asked the following questions by inmate Menchaca and provided the following answers:

Q: Are you certified to collect urine samples?
A: Yes. Urinalysis Training here at San Quentin Per S.Q. standards, ("O.J.T").
Q: When we came to Four-Post for testing, did you take us to the Chapel rest room to conduct this urine sample?
A: Yes.
Q: Is the Chapel rest room the area designated by the Institution Head (as the place) to conduct urine sample collections?
A: As far as I know.
Q: Did you strip search inmate Menchaca and inmate Menchaca prior to collecting the urine sample?
A: I did a pat down, and watched them physically do the test, but I did not strip search them.
Q: Did you issue us a pair of disposable gloves?
A: No.
Q: When you issued the urine sample bottles, were the bottles still inside the sealed plastic bag?
A: No, I handed it to both of you outside of the bag. I put them in the bag afterwards.
Q: Was the bottle open when you handed it to us at Four-Post?
A: The bottle was open - once they are closed, they are sealed.
Q: Did I asked you, "Why are these bottles already open?"
A: I do not recall you asking me this.
Q: Did you reply, "Don't trip homes, we wouldn't put anything inside of them?"
A: No.
Q: While trying to give you our urine samples, did the janitor, an inmate, and a free staff go into the rest room, while we were trying to give you our urine sample?
A: I do not recall know about that. I don't recall that happening.

Q: Did you inform us (inmate Menchaca and inmate Menchaca) that the taking of the urine samples were part of I.S.U.?
A: I do not recall that, or recall who requested me to do it.

That completed the questions for Officer Gonzales.

SEE CDC 115 PART C HEARING CONTINUATION

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| C.P. Young, Correctional Lieutenant | 2/6/05 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | 2-18-05 | 1300 |

[X] COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE _3_ OF _4_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| D-87421 | MENCHACA | 03-05-NB-01-002 | CSP-SQ | 02/06/05 |

[X] SUPPLEMENTAL   [X] CONTINUATION OF:   [ ] 115 CIRCUMSTANCES   [X] HEARING   [ ] IE REPORT   [ ] OTHER_____

Officer Lelis was asked the following questions by inmate Menchaca and provided the following answers:

Q:  Do you remember holding a conversation with the Free Staff in the rest room, while inmate Menchaca and inmate Menchaca were trying to give urine samples?
A:  No; there were no free staff.
Q:  Did you ask Free Staff, "Is that a calendar you are holding?" and Free Staff replied "Yes," - then he showed it to you and you looked through it?
A:  I was talking to an inmate outside the Chapel area.  I stopped an inmate from going into the restroom area where you were being tested.

No other questions were asked of Officer Lelis.

Officer Pilacelli was asked the following questions by inmate Menchaca and provided the following answers:

Q:  When you came and body searched me, did I not ask you, "What's this all about?"  Did you not tell me that my name was dropped?
A:  I don't recall.  I may have.  I was searching a bunch of houses that day.

No other questions were asked of Officer Pilacelli.

FINDINGS: Inmate Menchaca is found GUILTY of violating DR CCR 3016(a), a Division "B" offense, for the specific act of "Possession of a Controlled Substance."

The preponderance of evidence relied upon to render a finding of GUILTY included:

The information contained in the RVR, specifically:

On Wednesday, January 05, 2005, laboratory results were received from National toxicology Laboratories, which indicated a positive reading in the urine sample, collected from inmate Menchaca, D-87421, housed in N-4-089 for (METH) Methamphetamine. This sample was collected from inmate Menchaca, per CCR Section 3290(c) at approximately 1200 hours, on Monday, December 27, 2004, on the basis of drug paraphernalia being found in the immediate area in front of your (Menchaca) cell by the Security Squad during a search.  Upon confirmation with Pharmacist M. Mason of San Quentin Pharmacy, it is determined that inmate Menchaca is not on any medication that would test positive for Methamphetamine.

SEE CDC 115 PART C HEARING CONTINUATION

| SIGNATURE OF WRITER C.P. Young, Correctional Lieutenant | DATE SIGNED 2-6-05 |
|---|---|

| [X] COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 2-18-05 | TIME SIGNED 1300 |
|---|---|---|---|

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTIONS
PAGE __4__ OF __4__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| D-87421 | MENCHACA | 03-05-NB-01-002 | CSP-SQ | 02/06/05 |

| [X] SUPPLEMENTAL | [X] CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | [X] HEARING | ☐ IE REPORT | ☐ OTHER_____ |

DISPOSITION: Guilty.

ASSESSED:

Inmate Menchaca is assessed **150 days** forfeiture of credits under a Division "B" offense.

One (1) Year and one (1) Month of Random Drug Testing effective through 02/07/05 through 02/06/06.

Ninety Days (90) Loss of Visiting Privileges to be followed by ninety days (90) of non-contact visits (behind glass).

Inmate Menchaca was advised that the disposition of the Rules Violation Report would not become final until approved by the Chief Disciplinary Officer, at which time he will receive a final copy of the completed CDC-115.

Inmate Menchaca was advised of his right to appeal the findings of this hearing, and the methods of appealing, and credit restoration in accordance with CCR 3327 and 3328, governing restoration of forfeited credits.

Inmate Menchaca was counseled, warned and reprimanded regarding future behavior expectations.

| SIGNATURE OF WRITER C.P. Young, Correctional Lieutenant | DATE SIGNED 2-6-05 |
|---|---|
| GIVEN BY: (Staff's Signature) | DATE SIGNED 2-18-05 | TIME SIGNED 1700 |

[☑] COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

OSP 99 25082

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**SERIOUS RULES VIOLATION REPORT**                            Log # 03-05-NB-01-002

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|------------|--------------|----------------------|------|-------------|---------|
| D-87412 | MENCHACA | CCR§ 3016 (b) | 01-05-05 | CSP-S.Q. | |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | N ▶ INMATE'S SIGNATURE | DATE |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I REVOKE** my request for postponement. | ▶ | |

## STAFF ASSISTANT

| STAFF ASSISTANT ☐ REQUESTED ☒ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|

| ☐ ASSIGNED | DATE | NAME OF STAFF | |
|---|---|---|---|
| ☒ NOT ASSIGNED | REASON DNMC CCR title 15 Section 3315 (d)(2) | | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE ☐ REQUESTED ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|

| ☐ ASSIGNED | DATE | NAME OF STAFF | |
|---|---|---|---|
| ☒ NOT ASSIGNED | REASON DNMC CCR title 15 Section 3315 (d)(1) | | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
☐ REPORTING EMPLOYEE  ☐ STAFF ASSISTANT  ☐ INVESTIGATIVE EMPLOYEE  ☐ OTHER _____  ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE ▶ | DATE |
|---|---|---|

| ☒ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) | TIME 1700 | DATE 1-10-05 |
|---|---|---|---|

CDC 115-A (7/88)                                                                         88 86095

*If additional space is required use supplemental pages*

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA
# CRIME / INCIDENT REPORT
## PART A – COVER SHEET
CDC 837–A (Rev. 09/03)

| PAGE    OF | INCIDENT LOG NUMBER SQP-003-05-01-016 | INCIDENT DATE 01-05-05 | INCIDENT TIME 07:00 Hrs. |
|---|---|---|---|

| INSTITUTION | FACILITY | FACILITY LEVEL | INCIDENT SITE | LOCATION | ☐ASU ☐SHU ☐PSU ☐PHU | USE OF FORCE |
|---|---|---|---|---|---|---|
| CSP - SQ | III | ☐ I ☒ II ☐ III ☐ IV | 4 Post | Yard | ☐SNY ☒GP ☐CTC ☐R.C. SEG. YARD: ☒ CC ☐ WA ☐ RM | ☐ YES ☒ NO |

☐ CCR ☐ PC ☐ N/A
NUMBER / SUBSECTION:  3016(b); Stimulants and Sedative

SPECIFIC CRIME / INCIDENT
Possession of a Controlled Substance

| D. A. REFERRAL ELIGIBLE | SERT ACTIVATED | NMT ACTIVATED | MUTUAL AID REQUEST | PIO/AA NOTIFIED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO |

## RELATED INFORMATION (CHECK ALL THAT APPLY)

| DEATH | CAUSE OF DEATH | ASSAULT/BATTERY | TYPE OF ASSAULT/BATTERY | |
|---|---|---|---|---|
| ☐ INMATE ☐ STAFF ☐ VISITOR ☐ OTHER: ☒ N/A | ☐ ACCIDENTAL ☐ SUICIDE ☐ EXECUTION ☐ NATURAL ☐ HOMICIDE ☐ OVERDOSE ☐ UNKNOWN ☐ N/A | ☐ ON INMATE ☐ ON STAFF ☐ ON VISITOR ☐ OTHER: ☒ N/A | ☐ BEATING ☐ GASSING ☐ POISONING ☐ SEXUAL ☐ SHOOTING ☐ SLASHING | ☐ SPEARING ☐ STABBING ☐ STRANGLING ☐ OTHER: ☒ N/A |

| SERIOUS INJURY | INMATE WEAPONS | | SHOTS FIRED / TYPE WEAPON / FORCE | | | |
|---|---|---|---|---|---|---|
| ☐ INMATE ☐ STAFF ☐ VISITOR ☐ OTHER: ☐ N/A | ☐ CHEMICAL SUBSTANCE ☐ CLUB / BLUDGEON ☐ EXPLOSIVE ☐ FIREARM ☐ HANDS / FEET ☐ KNIFE ☐ SAP/SLUNG SHOT ☐ PROJECTILE ☐ SPEAR ☐ SLASHING INSTRUMENT ☐ STABBING INSTRUMENT ☐ OTHER: ☒ N/A | TYPE: ☐ COMMERCIAL WEAPON ☐ INMATE MANUFACTURED WEAPON | WEAPON:   WARNING #   EFFECT # ☐ MINI 14 ☐ 38 CAL. ☐ 9MM ☐ SHOTGUN LAUNCHER: ☐ 37MM ☐ L8 ☐ 40MM ☐ 40MM MULTI ☐ HFWRS FORCE: ☐ SIDE-HANDLEBATON ☐ PHYSICAL FORCE ☐ X10 ☐ OTHER: | | TYPE:   NO. BATON ROUND: WOOD RUBBER FOAM STINGER: .32(A) .60(B) EXACT IMPACT: CTS 4557 XM 1006 CHEMICAL: ☐ OC ☐ CN ☐ CS ☒ N/A | |

| ESCAPES | | |
|---|---|---|
| ☐ W / FORCE ☐ W/O FORCE ☐ ATTEMPTED ☒ N/A | ☐ BODILY FLUID ☐ OTHER FLUID: ☐ UNKNOWN LIQUID ☒ N/A | |

| CONTROLLED SUBSTANCE / WEIGHT | | PROGRAM STATUS | EXCEPTIONAL ACTIVITY | |
|---|---|---|---|---|
| ☒ POSITIVE UA ☐ WITH PACKAGING ☐ AMPHETAMINE ☐ BARBITURATES ☐ COCAINE ☐ CODEINE ☐ HEROIN ☐ MARIJUANA/THC ☒ METHAMPHETAMINE ☐ MORPHINE ☐ OTHER: ☐ N/A | ☐ CONTROLLED MEDS ☐ WITHOUT PACKAGING PRELIMINARY    LAB | ☐ MODIFIED PROGRAM ☐ LOCKDOWN ☐ STATE OF EMERGENCY IF YES, LIST AFFECTED PROGRAMS: ☒ N/A | ☐ EMPLOYEE JOB ACTION ☐ ENVIRONMENTAL HAZARD ☐ EXPLOSION ☐ FIRE ☐ GANG/DISRUPTIVE GROUP ☐ HOSTAGE ☐ INMATE STRIKE ☐ MAJOR DISTURBANCE ☐ MAJOR POWER OUTAGE ☐ PUBLIC DEMONSTRATION ☐ NATURAL DISASTER ☐ SPECIAL INTEREST I/M | ☐ WEATHER ☐ SEARCH WARRANT ☐ ARREST ☐ OTHER: EXTRACTION: ☐ CONTROLLED ☐ IMMEDIATE ☒ N/A |

BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES):

On Wednesday, January 5, 2005, Laboratory results were received from National Toxicology Laboratory which indicated a positive reading in the urine sample collected from inmate Menchaca, D-87412.

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF | TITLE | ID" | BADGE# |
|---|---|---|---|
| J. W. Reid | Correctional Lieutenant | 236337 | 5146 |
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. (INCIDENT SITE) 5808 | DATE 01-012-05 |
| NAME OF WARDEN / AOD (PRINT/SIGN) D. Dacanay | | TITLE Associate Warden Unit III | DATE 1-12-05 |

STATE OF CALIFORNIA
# CRIME / INCIDENT REPORT
## PART B1 – INMATE
CDC 837–B1 (Rev. 09/03)

PAGE          OF

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| CSP – San Quentin | III | SQP-003-05-01-016 |

## INMATE (ENTRY SHEET)

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|
| Menchaca | Gerardo | J. | D-87412 | M | Hispanic | 672290E3 | A06760269 |

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST. | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| ☐ VICTIM  ☒ SUSPECT  ☐ WITNESS | N/A | ☐ YES  ☒ NO | 06-19-88 | 0206-02 | Lifer | ☐ YES  ☒ NO | 10-16-56 | 4N89 |

| | COMMITMENT OFFENSE | COUNTY OF COMMITMENT |
|---|---|---|
| ☐ CCMS  ☐ EOP  ☐ DPP  ☐ DMH  ☐ MCHB  ☐ DDP  ☒ N/A | PC 187; Murder | Lassen |

DESCRIPTION OF INJURIES:

PRISON GANG / DISRUPTIVE GROUP

☒ N/A                        ☐ VALIDATED  ☐ ASSOCIATED  ☒ N/A

☐ HOSPITALIZED  ☐ TREATED & RELEASED  ☐ REFUSED TREATMENT        NAME/LOCATION OF HOSP./TREAT. FACILITY

☐ DECEASED DATE:                        ☒ N/A          ☒ N/A

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST. | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| ☐ VICTIM  ☐ SUSPECT  ☐ WITNESS |  | ☐ YES  ☐ NO |  |  |  | ☐ YES  ☐ NO |  |  |

| | COMMITMENT OFFENSE | COUNTY OF COMMITMENT |
|---|---|---|
| ☐ CCMS  ☐ EOP  ☐ DPP  ☐ DMH  ☐ MCHB  ☐ DDP  ☐ N/A |  |  |

DESCRIPTION OF INJURIES:

PRISON GANG / DISRUPTIVE GROUP

☐ N/A                        ☐ VALIDATED  ☐ ASSOCIATED  ☐ N/A

☐ HOSPITALIZED  ☐ TREATED & RELEASED  ☐ REFUSED TREATMENT        NAME/LOCATION OF HOSP./TREAT. FACILITY

☐ DECEASED DATE:                        ☐ N/A          ☐ N/A

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST. | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| ☐ VICTIM  ☐ SUSPECT  ☐ WITNESS |  | ☐ YES  ☐ NO |  |  |  | ☐ YES  ☐ NO |  |  |

| | COMMITMENT OFFENSE | COUNTY OF COMMITMENT |
|---|---|---|
| ☐ CCMS  ☐ EOP  ☐ DPP  ☐ DMH  ☐ MCHB  ☐ DDP  ☐ N/A |  |  |

DESCRIPTION OF INJURIES:

PRISON GANG / DISRUPTIVE GROUP

☐ N/A                        ☐ VALIDATED  ☐ ASSOCIATED  ☐ N/A

☐ HOSPITALIZED  ☐ TREATED & RELEASED  ☐ REFUSED TREATMENT        NAME/LOCATION OF HOSP./TREAT. FACILITY

☐ DECEASED DATE:                        ☐ N/A          ☐ N/A

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST. | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| ☐ VICTIM  ☐ SUSPECT  ☐ WITNESS |  | ☐ YES  ☐ NO |  |  |  | ☐ YES  ☐ NO |  |  |

| | COMMITMENT OFFENSE | COUNTY OF COMMITMENT |
|---|---|---|
| ☐ CCMS  ☐ EOP  ☐ DPP  ☐ DMH  ☐ MCHB  ☐ DDP  ☐ N/A |  |  |

DESCRIPTION OF INJURIES:

PRISON GANG / DISRUPTIVE GROUP

☐ N/A                        ☐ VALIDATED  ☐ ASSOCIATED  ☐ N/A

☐ HOSPITALIZED  ☐ TREATED & RELEASED  ☐ REFUSED TREATMENT        NAME/LOCATION OF HOSP./TREAT. FACILITY

☐ DECEASED DATE:                        ☐ N/A          ☐ N/A

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

# CRIME / INCIDENT REPORT
## PART B2 – STAFF
CDC 837–B2 (Rev. 09/03)

| PAGE | OF |
|------|-----|

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|-------------|----------|---------------------|
| CSP – San Quentin | III | SQP-003-05-01-016 |

## STAFF (ENTRY SHEET)

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|------------|-------|-----|-------|-----|-----------|-------|
| Mullen | D. | J | Correctional Officer | Male | White | Sun/Mon |

| CHECK ONE | BADGE # | ID # | POST ASSIGN. # | POSITION |
|-----------|---------|------|----------------|----------|
| ☒ PRIMARY   ☐ CAMERA | 30190 | 236849 | 476 | Urinalysis Coordinator |
| ☐ RESPONDER | | | | |
| ☐ WITNESS | DESCRIPTION OF INJURIES: | | | |
| ☐ VICTIM | ☒ N/A | | | |

| ☐ HOSPITALIZED   ☐ TREATED & RELEASED | NAME/LOCATION OF HOSP./TREAT. FACILITY | USED FORCE ☐ YES  ☒ NO  TYPE: r | PROCESSED EVIDENCE ☐ YES  ☒ NO |
|---|---|---|---|
| ☐ REFUSED TREATMENT | | | |
| ☐ DECEASED DATE:   ☒ N/A | ☒ N/A | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|------------|-------|-----|-------|-----|-----------|-------|
| | | | | | | |

| CHECK ONE | BADGE # | ID # | POST ASSIGN. # | POSITION |
|-----------|---------|------|----------------|----------|
| ☐ PRIMARY   ☐ CAMERA | | | | |
| ☐ RESPONDER | | | | |
| ☐ WITNESS | DESCRIPTION OF INJURIES: | | | |
| ☐ VICTIM | ☒ N/A | | | |

| ☐ HOSPITALIZED   ☐ TREATED & RELEASED | NAME/LOCATION OF HOSP./TREAT. FACILITY | USED FORCE ☐ YES  ☐ NO  TYPE: | PROCESSED EVIDENCE ☐ YES  ☐ NO |
|---|---|---|---|
| ☐ REFUSED TREATMENT | | | |
| ☐ DECEASED DATE:   ☐ N/A | ☐ N/A | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|------------|-------|-----|-------|-----|-----------|-------|
| | | | | | | |

| CHECK ONE | BADGE # | ID # | POST ASSIGN. # | POSITION |
|-----------|---------|------|----------------|----------|
| ☐ PRIMARY   ☐ CAMERA | | | | |
| ☐ RESPONDER | | | | |
| ☐ WITNESS | DESCRIPTION OF INJURIES: | | | |
| ☐ VICTIM | ☐ N/A | | | |

| ☐ HOSPITALIZED   ☐ TREATED & RELEASED | NAME/LOCATION OF HOSP./TREAT. FACILITY | USED FORCE ☐ YES  ☐ NO  TYPE: | PROCESSED EVIDENCE ☐ YES  ☐ NO |
|---|---|---|---|
| ☐ REFUSED TREATMENT | | | |
| ☐ DECEASED DATE:   ☐ N/A | ☐ N/A | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|------------|-------|-----|-------|-----|-----------|-------|
| | | | | | | |

| CHECK ONE | BADGE # | ID # | POST ASSIGN. # | POSITION |
|-----------|---------|------|----------------|----------|
| ☐ PRIMARY   ☐ CAMERA | | | | |
| ☐ RESPONDER | | | | |
| ☐ WITNESS | DESCRIPTION OF INJURIES: | | | |
| ☐ VICTIM | ☐ N/A | | | |

| ☐ HOSPITALIZED   ☐ TREATED & RELEASED | NAME/LOCATION OF HOSP./TREAT. FACILITY | USED FORCE ☐ YES  ☐ NO  TYPE: | PROCESSED EVIDENCE ☐ YES  ☐ NO |
|---|---|---|---|
| ☐ REFUSED TREATMENT | | | |
| ☐ DECEASED DATE:   ☐ N/A | ☐ N/A | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|------------|-------|-----|-------|-----|-----------|-------|
| | | | | | | |

| CHECK ONE | BADGE # | ID # | POST ASSIGN. # | POSITION |
|-----------|---------|------|----------------|----------|
| ☐ PRIMARY   ☐ CAMERA | | | | |
| ☐ RESPONDER | | | | |
| ☐ WITNESS | DESCRIPTION OF INJURIES: | | | |
| ☐ VICTIM | ☐ N/A | | | |

| ☐ HOSPITALIZED   ☐ TREATED & RELEASED | NAME/LOCATION OF HOSP./TREAT. FACILITY | USED FORCE ☐ YES  ☐ NO  TYPE: | PROCESSED EVIDENCE ☐ YES  ☐ NO |
|---|---|---|---|
| ☐ REFUSED TREATMENT | | | |
| ☐ DECEASED DATE:   ☐ N/A | ☐ N/A | | |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

CRIME / INCIDENT REPORT
PART A1 – SUPPLEMENT
CDC 837–A1 (Rev. 09/03)

| PAGE | OF | INCIDENT LOG NUMBER |
| | | SQP-003-05-01-016 |

| INSTITUTION | FACILITY | DATE OF INCIDENT | TIME OF INCIDENT |
| CSP – SAN QUENTIN | III | 01-05-05 | 07:00 hRS |

TYPE OF INFORMATION:

☒ SYNOPSIS/SUMMARY OF INCIDENT   ☐ SUPPLEMENTAL INFORMATION   ☐ AMENDED INFORMATION   ☐ CLOSURE REPORT

CIRCUMSTANCES:

On Wednesday, January 5, 2005, Laboratory results were received fron National Toxicology Laboratory which indicated a positive reading in the urine sample collected from inmate Menchaca, D-87412, 4N89 for Methamphetamine. This sample was collected from inmate Menchaca, per the California Code of Regulations (CCR) Title 15, Section 3290 ( c ) on Monday, December 27, 2004 on the basis of drug pararphernalia being found in the immediate area in front of Menchaca's cell. Upon corfirmation with Pharmacist M. Mason of San Quentin Pharmacy, it is determined that inmate Menchaca is not on any medication that would test positive for Methamphetamine. Based on this positive laboratory result, inmate Menchaca is being issued this CDC-115 for violation of CCR, Section 3016, Possession of Methamphetamine. As per Section 3290 (f) this CDC-115 is being issued for possession of a controlled Substance as a result of the attached positive test report submitted by the National Toxicology Laboratories.   Inmate Mencahca is not a participant in the Mental Health Delivery System as of this date, and he is aware of this report.

The folowing administrative staff was notified of this report; Lt E. Evans, Watch Commander, K. J. Williams, Facility Captain; and D. Dacanay, Associate Warden Unit III.

SUSPECT(S)

Inmate Menchaca, D-87412

STAFF INJURIES:

None

USE OF FORCE

None.

THIS INCIDENT WILL NOT BE REFERRED TO THE MARIN COUNTY DISTRICT ATTORNEY'S OFFICE FOR FELONY PROSECUTION.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF | TITLE | ID# | BADGE# |
| J. W. Reid | Correctional Lieutenant | 236337 | 5146 |

| SIGNATURE OF REPORTING STAFF | | PHONE EXT.  (INCIDENT SITE) | DATE |
| | | 5808 | 01-12--05 |

| NAME OF WARDEN / AOD (PRINT/SIGN) | | TITLE | DATE |
| D. Dacanay | | Associate Warden Unit III | |

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDC 837-C (Rev. 09/03)

DEPARTMENT OF CORRECTIONS

PAGE __1__ OF __1__     INCIDENT LOG NUMBER

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| MULLEN | D. | J. | 01/05/05 | 12:00 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 476 | URINALYSIS COOR. | 19 YR. 6 MO. | | NORTH BLOCK |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE ☐ N/A |
|---|---|---|---|
| S/M | 0600-1400 | POSSESSION OF A CONTROLLED SUBSTANCE | 3016 (b) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☒ PRIMARY | S-C/O D. MULLEN | S-I/M MENCHACA    D-87412 |
| ☐ RESPONDER | | |
| ☐ WITNESS | | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | SHOTS FIRED BY YOU | | | |
|---|---|---|---|---|---|---|
| | | | | TYPE: | NO: | NO: |
| ☐ WEAPON | ☐ MINI-14 | CHEM. TYPE: | | | | |
| ☐ PHYSICAL | ☐ 9 MM | ☐ OC ___ | 37 MM ___ | | 9 MM ___ | |
| ☒ NONE | ☐ 38 CAL | ☐ CN ___ | L8 ___ | | 38 CAL ___ | |
| | ☐ SHOTGUN | ☐ CS ___ | 40 MM ___ | | MINI-14 ___ | |
| FORCE OBSERVED BY YOU | ☐ 37 MM  ☐ L8 | ☐ OTHER:___ | 40 MULTI ___ | | ☒ N/A | |
| ☐ WEAPON | ☐ 40 MM  ☐ 40 MULTI | ☒ N/A | SHOTGUN ___ | | | |
| ☐ PHYSICAL | ☐ HFWRS  ☐ BATON | | | | | |
| ☒ NONE | | | | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☒ YES | URINE SAMPLE | PROCESSED WITH NATIONAL TOXIOCOLOGY LABORATORY | ☐ YES | ☐ YES |
| ☐ NO | ☐ N/A | ☐ N/A | ☒ NO | ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES | | | ☐ BODILY  ☒ N/A | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☐ UNKNOWN | ☒ NO |
| | | | ☐ OTHER: ___ | |

**NARRATIVE:**
On Wednesday, January 5, 2005 laboratory results were received from National Toxicology Laboratories, which indicated a positive reading in the urine sample, collected from inmate Menchaca, D87412, housed in 4-N-89 for (METH) Methamphetamine. This sample was collected from inmate Menchaca, per CCR section 3290 (c) on Monday, December 27, 2004 at approximatley 1200 hours by correctional officer B. Gonzalez, per the request of North Block Sergeant K. Dennis. The basis for this requested sample was because of drug paraphernalia being found in the immediate area in front of inmate Menchaca cell. Upon confirmation with pharmacist M. Mason of San Quentin Pharmacy, it is determined that inmate Menchaca is not on any medication that would test positive for, (METH) Methamphetamine. Based on this positive laboratory result, inmate Menchaca is being issued this CDC 115 for violation of CCR, section 3016, possession of (METH) Methamphetamine. As per section 3290 (f) this CDC 115 is being issued for possession of a controlled substance based on the positive test being confirmed by National Toxicology Laboratories.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| C/O D. Mullen (signature) | C/O | 30190 | 236849 | 01/05/05 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| R. FRAID SERGEANT (signature) | 1-11-05 | ☐ YES ☐ NO | ☐ YES ☒ NO | 1-11-05 |

Distribution:   Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

# SUBSTANCE ABUSE TESTING FORM

DATE: 12-27-04                                      TIME: 12:00

NAME: Menchaca        CDC NUMBER: D-87412      HOUSING: 4N89

(CHECK ONE OF THE FOLLOWING)

☑ It has been determined that reasonable cause exists to suspect you of being in violation of Section 3016 of the California Code of Regulations (CCR), Title 15, Stimulants and Sedatives, due to the following Circumstances:

During cell search drug paraphernilia found in immediate area in front of cell.

☐ Going to a family visit

☐ Returning From a Family Visit

☐ Assigned to the Random Drug Testing Program

Incident to the reason and / or cause noted, you are ordered to submit a urine sample for testing to determine the presence of a controlled substance in your body under section 3290 (c) of the California Code of Regulations, Title 15. As per section section 3290 (d) of the California Code of Regulations, You DO NOT have the right to refuse such a test without the refusal resulting in the issuance of a Rules Violation Report (CDC-115) for violation of Section 3290 (d) which states in part " An inmate must provide a urine sample when ordered to do so to detect the use of controlled substances". When you submit to such a test, the results will be made available to you upon request. If the test indicates a presence of a controlled substance in your body, such evidence can and will be used against you at a disciplinary hearing and / or in court.

I acknowledge that I have been advised of my obligation to submit to a urine test and the reason(s) I am issued this order. I understand that by signing this form it is NOT an admission of guilt. Having this in mind, I choose;

☑ to submit to a urine test.                     ☐ Check if inmate is a Diabetic

☐ to refuse to submit to a urine test.           ☐ Check if inmate is taking Medication.
                                                     (List prescribed medication only)

M. Menchaca D87412
_____
Signature of Inmate

c/o B. R. Gonzalez   R02240 (#476)
_____
(Print) Officer collecting sample and Position Number.

c/o B.R. Gonzalez fr.
_____
Signature of Officer collecting Sample.

IONAL TOXICOLOGY LABORATORIES, INC.

                    Daily Laboratory Report
      FOR UNIT/OFFICE #    ▓▓▓▓    CAL. STATE PRI. SAN QUENTIN
            DATE REPORTED: 01/04/05

|  |  |  |  | Tests | A | M | M | C | C | B |  | A |
|--|--|--|--|-------|---|---|---|---|---|---|--|---|
|  |  |  |  | Orded | M | E | O | O | O | A | P | L | T |
|  |  | Agt Rec. | Coll. | P | A | T | P | T | R | D | C | R | C | C | H |
|  | CDC # | Int Date | Date | A | L | H | H | H | P | N | N | B | P | O | C |
| ssion Name |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

00882 MENCHACA, C.    D87142 CDC 01/03 12/27   X X X   N P N N N N N N N

D87412

Recv By U.T.O. 1/5/05

RECTOR: ▓▓▓▓▓▓▓▓        TOXICOLOGIST: ▓▓▓▓▓▓▓▓▓

= PANEL   AL = ALCOHOL   TH(C) = CANNABINOIDS   AMPH = AMPHETAMINE
H = METHAMPHETAMINE   MORP = MORPHINE   CODN = CODEINE   COCN = COCAINE
B = BARBITUATES   ALCO = ETHANOL   PCP = PHENCYCLIDINE
  Negative P = Positive T = Sample was Tampered U = Sample is Untestable
  Quantity not Sufficient to Confirm
  Phenobarbital 2 = Short Acting Barbituates
  Phenobarbital and Short Acting Barbituates 4 = Morphine (Large Amount)

# EXHIBIT 5

STATE OF CALIFORNIA

**RULES VIOLATION REPORT**

DEPARTMENT OF CORRECTIONS

03-05-NB-011-Q18

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| D-87412 | Menchaca | Life 12-31-2199 | CSP-SQ | 4-N-89-L | |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR 3016 (b) | Poss. of a controlled subst. | | 11-23-05 | |

CIRCUMSTANCES

On Wednesday, November 23, 2005, Laboratory results were received
from National Toxicology Laboratories, which indicated a positive reading in the urine sample
collected from Inmate Menchaca D-87412, housed in 4-N-89-L for Amphetamine, and Methamphetamine.
This sample was collected from Inmate Menchaca per CCR 3290(c) on Tuesday, November,8,2005
on the basis of Inmate Menchaca being placed on Mandatory Random Drug Testing Program.
Upon confirmation with Pharmacist M.Mason of San Quentin Pharmacy, it is determined that Inmate
Menchaca is not on any medication that would test positive for amphetamine,or Methamphetamine.
Based on this positive Laboratory result Inmate Menchaca is being issued this CDC 115 for
violation of CCR section 3016 (a),possession of Amphetamine, and Methamphetamine.
As per CCR section 3290 (f) this CDC 115 is being issued for possession of a controlled
substance based on the positive test being confirmed by National Toxicology Laboratories.
Inmate Menchaca is NOT a participant in the Mental Health Delivery System as of this date,and
is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| Correctional Officer,D.Cambell | 11-23-05 | Post # 746 | Sat/Sun |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| Correctional Sgt. T.Bess | 12/05/05 | N/A | |

| | DATE | | LOC. |
|---|---|---|---|

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | | HEARING REFERRED TO |
|---|---|---|---|---|---|
| ☐ ADMINISTRATIVE | B | 12/5/05 | Correctional Captain,K.J.Williams | | ☐ HO  ☒ SHO  ☐ SC  ☐ FC |
| ☒ SERIOUS | | | | | |

COPIES GIVEN INMATE BEFORE HEARING

| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| | C. Grue  c/o | 127/05 | 1730 | CSB Report |

| ☒ INCIDENT REPORT LOG NUMBER: SQ 003-0712-0486 | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| | C. Grue  c/o | | | C. Grue  c/o | 12-9-05 | 1730 |

HEARING

Refer to attached Part C

| SIFICATION  ☐ BPT/NAEA | SIGNATURE | DATE | TIME |
|---|---|---|---|
| CORRECTIONAL LIEUTENANT | | 7/20/05 | |
| ility Captain | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE  J.C. Allen, AW-III | DATE |
| ...TER HEARING | BY: (STAFF'S SIGNATURE)  C. Grue  c/o | | DATE  1-15 |

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C                        PAGE ___1___ OF ___2___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| D-87412 | MENCHACA | 03-05-NB-11-018 | CSP-SQ | 12-20-05 |

| ☐SUPPLEMENTAL | ☑CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☑HEARING | ☐I.E .REPORT | ☐OTHER |

**Hearing**: On Tuesday, December 20, 2005, General population inmate Menchaca, D-87412 appeared before Senior Hearing Officer J. W. Reid, Correctional Lieutenant, for the adjudication of a Serious Division "B" CDC-115, Log# 03-05-NB-11-018. Inmate Menchaca stated that he was in satisfactory health; and that he is not a participant/patient in the Mental Health Services Delivery System; received a copy of the written report at least 24 hours before the hearing as reflected on this rules violation report, and was ready and/or prepared to proceed.

A Staff Assistant was determined unnecessary, pursuant to the California Code of Regulations Title 15, Section 3315(d)(2).

An Investigative Employee was determined necessary, pursuant to the CCR, Section 3315(d)(1).

This CDC-115 reflects that this matter was not referred to the District Attorney's office.

Inmate Menchaca did not requested the following witness(es) for this hearing: Correctional Officer D. Mullen, and Mrs. S. Dacanay, Appeals Coordinator. The request to have Mrs. Dacanay present was denied because she has no knowledge of the incident as herein described. Secondly, inmate Menchaca did not have any questions for Mrs. Dacanay, nor could he articulate the need to have her present at the hearing.

Inmate Menchaca asked the following questions of Officer Mullen:

- 1.   Do you pat search the inmates you are testing?
  Ans.   Yes , as well as constantly observing the inmate as the urine sample is being collected.

- 2.   The person that tested me [collected the sample], isn't he the one that is suppose to write me up?
  Ans.   Not necessarily. The Urinalysis Coordinator prepare all the necessary report(s) based on the laboratory findings, and submits them to the Housing Lieutenant who then prepares the incident package

- 3.   Once the urine sample is collected, how long do you hold them?
  Ans.   The collected sample are usually sent out within three (3) days.

The Rules Violation Report was read aloud to inmate Menchaca and he acknowledged an understanding of the charged against him. Inmate Menchaca entered a plea of **Not Guillty**, and stated I don't know. I got to plead Not Guil;ty.."

**Finding**: Inmate Menchaca was found Guilty of violating this Division "B-6" offense of the California Code of Regulations, Title 15, Section 3016(a); Controlled Substance, Drug Paraphenalia and Distribution, with the Specific Act being, "Possession of a Controlled Substance". The evidence of these findings consists of the information contained in the CDC-115, and the incident Package log # SQP-003-05-12-0486:

- Laboratory results were received from the National Toxicology Laboratories indicating a positive reading in the urine sample collected from inmate Menchaca for Methamphetamines, amphetamines, and Marijuana.
- The sample was collected on Tuesday, November 8, 2005, on the basis of inmate Menchaca being on the Random drug Testing Program.
- Inmate Menchaca is not on any medication that would test positive for Amphetamines, Methamphetamines, or Marijuana.
- Refer to the attached report of laboratory findings.

| SIGNATURE OF WRITER     J. W. Reid | TITLE    Correctional Lieutenant | DATE NOTICE SIGNED    12-20-05 |
|---|---|---|
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED:    1-18-06 | TIME SIGNED:    1000 |

STATE OF CALIFORNIA

RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS

PAGE　2　OF　2

| CDC NUMBER<br>D-87412 | INMATE'S NAME<br>MENCHACA | LOG NUMBER<br>03-05-NB-11-018 | INSTITUTION<br>CSP-SQ | TODAY'S DATE<br>12-20-05 |
|---|---|---|---|---|

| ☐SUPPLEMENTAL | ☑CONTINUATION OF: | ☐CDC 115 CIRCUMSTANCES | ☑HEARING | ☐I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

The contents of the written report support the charge(s).

Inmate Menchac was counseled regarding future behavioral expectations, and advised of these findings and disposition. Inmate Menchaca was also informed that appeals of disciplinary result begins at the Second Level, as the First Level has been eliminated for disciplinary actions. All due process and procedural requirements have been met.

<u>Disposition:</u>　Guilty.　This decision is based on the information gleaned above.　Therefore, I'm electing to find in inmate Menchaca Guilty as charged.

<u>Assessed:</u>　Due to inmate Menchaca's lifer status, he is not assessed any forfeiture of behavioral credits.
　　　　　This complaint is being referred to the Board of Prison Terms for review.

| SIGNATURE OF WRITER<br>J. W. Reid | TITLE<br>Correctional Lieutenant | DATE NOTICE SIGNED<br>12-20-05 | |
|---|---|---|---|
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED:<br>1-18-06 | TIME SIGNED:<br>1000 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| D-87412 | Menchaca | CCR 3016(b) | 11-23-05 | CSP-SQ | |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ N/A | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION | | |
|---|---|---|---|

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I REVOKE** my request for postponement. | ▶ | |

## STAFF ASSISTANT

| STAFF ASSISTANT ☐ REQUESTED | ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | | DATE |
|---|---|---|---|---|
| ☐ ASSIGNED | DATE | NAME OF STAFF | | |
| ☒ NOT ASSIGNED | REASON ONMC Per @ CCR 3315 (q)2 | | | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE ☐ REQUESTED | ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | | DATE |
|---|---|---|---|---|
| ☐ ASSIGNED | DATE | NAME OF STAFF | | |
| ☒ NOT ASSIGNED | REASON Onme Per CCR 3315 (d)1 | | | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

None

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
☐ REPORTING EMPLOYEE   ☐ STAFF ASSISTANT   ☐ INVESTIGATIVE EMPLOYEE   ☐ OTHER _____   ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| C/o D. Mullen | ☒ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE ▶ | DATE |
|---|---|---|

| ☒ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) | TIME | DATE |
|---|---|---|---|

CDC 115-A (7/88)

OSP 98 88

— If additional space is required use supplemental pages —

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTION

# CRIME / INCIDENT REPORT
## PART A - COVER SHEET
CDC 837-A (Rev. 09/03)

| | | |
|---|---|---|
| PAGE 1 OF __4__ | INCIDENT LOG NUMBER SQP-003-05-12-0486 | INCIDENT DATE 11/23/05 | INCIDENT TIME 11:00 |

| INSTITUTION | FACILITY | FACILITY LEVEL | INCIDENT SITE | LOCATION | | USE OF-FORCE |
|---|---|---|---|---|---|---|
| CSP-SQ | III | ☐ I  ☒ II<br>☐ III ☐ IV | 4 POST | YARD | ☐ ASU ☐ SHU ☐ PSU ☐ PHU<br>☐ SNY ☒ GP ☐ CTC ☐ RC<br>SEG. YARD: ☐ CC ☐ WA ☐ RM | ☐ YES ☒ NO |

SPECIFIC CRIME / INCIDENT
POSSESSION OF A CONTROLLED SUBSTANCE

☒ CCR ☐ PC ☐ N/A
NUMBER/SUBSECTION: 3016

| D. A. REFERRAL ELIGIBLE | SERT ACTIVATED | NMT ACTIVATED | MUTUAL AID REQUEST | PIO/AA NOTIFIED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ YES ☒ NO |

### RELATED INFORMATION (CHECK ALL THAT APPLY)

| DEATH | CAUSE OF DEATH | ASSAULT / BATTERY | TYPE OF ASSAULT / BATTERY | |
|---|---|---|---|---|
| ☐ INMATE | ☐ ACCIDENTAL ☐ SUICIDE | ☐ ON INMATE | ☐ BEATING | ☐ SPEARING |
| ☐ STAFF | ☐ EXECUTION ☐ NATURAL | ☐ ON STAFF | ☐ GASSING | ☐ STABBING |
| ☐ VISITOR | ☐ HOMICIDE | ☐ ON VISITOR | ☐ POISONING | ☐ STRANGLING |
| ☐ OTHER: | ☐ OVERDOSE | ☐ OTHER: | ☐ SEXUAL | ☐ OTHER: _____ |
| | ☐ UNKNOWN | | ☐ SHOOTING | |
| ☒ N/A | ☒ N/A | ☒ N/A | ☐ SLASHING | ☒ N/A |

| SERIOUS INJURY | INMATE WEAPONS | | SHOTS FIRED / TYPE WEAPON / FORCE | | |
|---|---|---|---|---|---|
| ☐ INMATE | ☐ CHEMICAL SUBSTANCE | TYPE: | WEAPON: | WARNING # | EFFECT # | TYPE: __NO__ |
| ☐ STAFF | ☐ CLUB / BLUDGEON | ☐ COMMERCIAL WEAPON | ☐ MINI 14 | | | BATON ROUND: |
| ☐ VISITOR | ☐ EXPLOSIVE | | ☐ 38 CAL. | | | WOOD ____ |
| ☐ OTHER: | ☐ FIREARM | ☐ INMATE MANUFACTURED | ☐ 9MM | | | RUBBER ____ |
| | ☐ HANDS / FEET | WEAPON | ☐ SHOTGUN | | | FOAM ____ |
| ☒ N/A | ☐ KNIFE | | LAUNCHER: | | | STINGER: |
| | ☐ SAP/SLUNG SHOT | | ☐ 37MM | | | .32 (A) ____ |
| | ☐ PROJECTILE | | ☐ L8 | | | .60 (B) ____ |
| ESCAPES | ☐ SPEAR | | ☐ 40MM | | | EXACTIMPACT |
| | ☐ SLASHING INSTRUMENT | | ☐ 40MM MULTI | | | CTS 4557 ____ |
| ☐ W / FORCE | ☐ STABBING INSTRUMENT | | ☐ HFWRS | | | XM 1006 ____ |
| ☐ W/O FORCE | ☐ OTHER: _____ | | FORCE: | | | CHEMICAL: |
| ☐ ATTEMPTED | | | ☐ SIDE-HANDLE BATON | | | ☐ OC |
| | ☐ BODILY FLUID ☐ OTHER FLUID: ____ | | ☐ PHYSICAL FORCE | | | ☐ CN |
| ☒ N/A | ☐ UNKNOWN LIQUID | | ☐ X10 | | | ☐ CS |
| | ☒ N/A | | ☐ OTHER: ____ | | | ☒ N/A |

| CONTROLLED SUBSTANCE / WEIGHT | | PROGRAM STATUS | EXCEPTIONAL ACTIVITY | |
|---|---|---|---|---|
| ☐ POSITIVE UA | ☐ CONTROLLED MEDS | ☐ MODIFIED PROGRAM | ☐ EMPLOYEE JOB ACTION | ☐ WEATHER |
| ☐ WITH PACKAGING | ☐ WITHOUT PACKAGING | ☐ LOCKDOWN | ☐ ENVIRONMENTAL HAZARD | ☐ SEARCH WARRAN |
| | PRELIMINARY    LAB | ☐ STATE OF EMERGENCY | ☐ EXPLOSION | ☐ ARREST |
| ☐ AMPHETAMINE | _____ | | ☐ FIRE | ☐ OTHER: |
| ☐ BARBITURATES | _____ | IF YES, LIST AFFECTED | ☐ GANG/DISRUPTIVE GROUP | |
| ☐ COCAINE | _____ | PROGRAMS: | ☐ HOSTAGE | _____ |
| ☐ CODEINE | _____ | | ☐ INMATE STRIKE | EXTRACTION: |
| ☐ HEROIN | _____ | | ☐ MAJOR DISTURBANCE | ☐ CONTROLLED |
| ☐ MARIJUANA/THC | _____ | | ☐ MAJOR POWER OUTAGE | ☐ IMMEDIATE |
| ☒ METHAMPHETAMINE | _____ | | ☐ NATURAL DISASTER | |
| ☐ MORPHINE | _____ | | ☐ PUBLIC DEMONSTRATION | |
| ☐ OTHER: _____ | _____ | | ☐ SPECIAL INTEREST I/M | ☒ N/A |
| ☐ N/A | | ☒ N/A | | |

BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES):
On Monday, December 5,2005, Laboratory results dated November 23, 2005 were received from National Toxicology Laboratories, which indicated a positive reading the urine sample, collected from inmate Menchaca, D87412

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID # | BADGE # |
|---|---|---|---|
| E. M. YOUNG | LIEUTENANT | 2361530 | 6897 |

| SIGNATURE OF REPORTING STAFF | PHONE EXT. (INCIDENT SITE) | DATE |
|---|---|---|
| | 5808 | 12/05/05 |

NAME OF WARDEN / AOD (PRINT/SIGN) | | TITLE | DATE |

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIO[

**CRIME / INCIDENT REPORT**
**PART A1 - SUPPLEMENT**
CDC 837-A1 (09/03)

| | | |
|---|---|---|
| PAGE __2__ OF __4__ | | INCIDENT LOG NUMBER<br>SQP-003-05-12-0486 |

| INSTITUTION<br>CSP-SQ | FACILITY<br>Unit III | DATE OF INCIDENT<br>11/23/05 | TIME OF INCIDENT<br>11:00 |
|---|---|---|---|

TYPE OF INFORMATION:
[X] SYNOPSIS/SUMMARY OF INCIDENT    [ ] SUPPLEMENTAL INFORMATION    [ ] AMENDED INFORMATION    [ ] CLOSURE REPORT

**NARRATIVE:**

On Monday, December 5, 2005, Laboratory results dated November 23, 2005 were received from National Toxicology Laboratories, which indicated a positive reading the urine sample, collected from inmate Menchaca, D87412

On Wednesday, November 23, 2005, Laboratory results were received from National Toxicology Laboratories, which indicated a positive reading the urine sample, collected from inmate Menchaca, D87412, housed in 4-N-89 for Methamphetamine (METH). This sample was collected from inmate Menchaca, per CCR section 3290 (c) on Tuesday, November 8, 2005 on the basis of inmate Menchaca being a participant in the Random Drug Testing Program. Upon confirmation with Pharmacist M. Mason of San Quentin Pharmacy, it is determined that inmate Menchaca is not on any medication that would test positive for Methamphetamine.

Inmate Menchaca will be issued a Rules Violation Report in violation of CCR section 3016, charging him the specific act of Possession of a Controlled Substance.

Inmate Menchaca is not a participant in the Mental Health Delivery System.

This Incident will not be referred to the Marin County District Attorney's Office for Felony prosecution.

The following Administrative staff was notified of this report: Correctional Lieutenant D. Graham, Watch Commander and Facility Captain K. J. Williams.

VICTIM: None

SUSPECTS: Inmate Menchaca D87412

STAFF INJURIES: There were no staff injuries.

USE OF FORCE: None

ESCORT: None

CRIMESCENE/EVIDENCE: Nation Toxicology Laboratory results

MEDICAL/MENTAL HEALTH EVALUATION: None

[ ] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE)<br>E. M. YOUNG | TITLE<br>LIEUTENANT | ID #<br>2361530 | BADGE #<br>6897 |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. (INCIDENT SITE)<br>5808 | DATE<br>12/05/05 |
| NAME OF WARDEN / AOD (PRINT/SIGN) | | TITLE | DATE / / |

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS
**CRIME / INCIDENT REPORT**
**PART B1 - INMATE**                                              PAGE __3__ OF __4__
CDC 837-B1 (09/03)

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| CSP - San Quentin | Unit III | SQP-003-05-12-0486 |

**INMATE (ENTIRE SHEET)**

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|
| MENCHACA | GERARDO | J | D87412 | M | HISP | 672290E3 | A06760269 |

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| ☐ VICTIM | N/A | ☐ YES / ☒ NO | 06 / 19 / 88 | 02 / 06 / 02 | T / B / D | ☐ YES / ☒ NO | 10 / 16 / 56 | 4N89L |
| ☒ SUSPECT | | | | | | | | |
| ☐ WITNESS | ☐ CCCMS ☐ EOP ☐ DPP ☐ DMH ☐ MHCB ☐ DDP ☒ N/A | | COMMITMENT OFFENSE PC 187 | | | | COUNTY OF COMMITMENT LASSEN | |

DESCRIPTION OF INJURIES:                                    PRISON GANG / DISRUPTIVE GROUP
                                                            ☐ VALIDATED  ☐ ASSOCIATED  ☒ N/A

☒ N/A
☐ HOSPITALIZED  ☐ TREATED & RELEASED  ☐ REFUSED TREATMENT    NAME/LOCATION OF HOSP./TREAT. FACILITY
☐ DECEASED DATE: _____   ☒ N/A    ☒ N/A

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| ☐ VICTIM | | ☐ YES / ☐ NO | / / | / / | / / | ☐ YES / ☐ NO | / / | |
| ☐ SUSPECT | | | | | | | | |
| ☐ WITNESS | ☐ CCCMS ☐ EOP ☐ DPP ☐ DMH ☐ MHCB ☐ DDP ☐ N/A | | COMMITMENT OFFENSE | | | | COUNTY OF COMMITMENT | |

DESCRIPTION OF INJURIES:                                    PRISON GANG / DISRUPTIVE GROUP
                                                            ☐ VALIDATED  ☐ ASSOCIATED  ☐ N/A

☐ N/A
☐ HOSPITALIZED  ☐ TREATED & RELEASED  ☐ REFUSED TREATMENT    NAME/LOCATION OF HOSP./TREAT. FACILITY
☐ DECEASED DATE: _____   ☐ N/A    ☐ N/A

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| ☐ VICTIM | | ☐ YES / ☐ NO | / / | / / | / / | ☐ YES / ☐ NO | / / | |
| ☐ SUSPECT | | | | | | | | |
| ☐ WITNESS | ☐ CCCMS ☐ EOP ☐ DPP ☐ DMH ☐ MHCB ☐ DDP ☐ N/A | | COMMITMENT OFFENSE | | | | COUNTY OF COMMITMENT | |

DESCRIPTION OF INJURIES:                                    PRISON GANG / DISRUPTIVE GROUP
                                                            ☐ VALIDATED  ☐ ASSOCIATED  ☐ N/A

☐ N/A
☐ HOSPITALIZED  ☐ TREATED & RELEASED  ☐ REFUSED TREATMENT    NAME/LOCATION OF HOSP./TREAT. FACILITY
☐ DECEASED DATE: _____   ☐ N/A    ☐ N/A

| NAME: LAST | FIRST | MI | CDC # | SEX | ETHNICITY | FBI # | CII # |
|---|---|---|---|---|---|---|---|

| CHECK ONE | CLASS SCORE | PV RTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | EXTRACTION | DOB | HOUSING ASSIGN. |
|---|---|---|---|---|---|---|---|---|
| ☐ VICTIM | | ☐ YES / ☐ NO | / / | / / | / / | ☐ YES / ☐ NO | / / | |
| ☐ SUSPECT | | | | | | | | |
| ☐ WITNESS | ☐ CCCMS ☐ EOP ☐ DPP ☐ DMH ☐ MHCB ☐ DDP ☐ N/A | | COMMITMENT OFFENSE | | | | COUNTY OF COMMITMENT | |

DESCRIPTION OF INJURIES:                                    PRISON GANG / DISRUPTIVE GROUP
                                                            ☐ VALIDATED  ☐ ASSOCIATED  ☐ N/A

☐ N/A
☐ HOSPITALIZED  ☐ TREATED & RELEASED  ☐ REFUSED TREATMENT    NAME/LOCATION OF HOSP./TREAT. FACILITY
☐ DECEASED DATE: _____   ☐ N/A    ☐ N/A

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

**CRIME / INCIDENT REPORT**
**PART B2- STAFF**
CDC 837-B2 (09/03)

PAGE __4__ OF __4__

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| CSP-SQ | Unit III North Block | SQP-003-05-12-0486 |

## STAFF (ENTIRE SHEET)

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| CAMPBELL | D | K | Correctional Officer | F | White | SSH |

| CHECK ONE | BADGE # | ID # | POST ASSIGN. # | POSITION |
|---|---|---|---|---|
| [X] PRIMARY [ ] CAMERA | 62741 | 2361995 | 746 | YARD 5 |

DESCRIPTION OF INJURIES:

[ ] RESPONDER
[ ] WITNESS
[ ] VICTIM

[X] N/A

[ ] HOSPITALIZED   [ ] TREATED & RELEASED   NAME/LOCATION OF HOSP./TREAT. FACILITY
[ ] REFUSED TREATMENT
[ ] DECEASED DATE: _____ [X] N/A   [X] N/A

USED FORCE  [X] YES  [ ] NO   TYPE: _____

PROCESSED EVIDENCE  [ ] YES  [X] NO

---

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

| CHECK ONE | BADGE # | ID # | POST ASSIGN. # | POSITION |
|---|---|---|---|---|
| [ ] PRIMARY [ ] CAMERA |  |  |  |  |

DESCRIPTION OF INJURIES:

[ ] RESPONDER
[ ] WITNESS
[ ] VICTIM

[ ] N/A

[ ] HOSPITALIZED   [ ] TREATED & RELEASED   NAME/LOCATION OF HOSP./TREAT. FACILITY
[ ] REFUSED TREATMENT
[ ] DECEASED DATE: _____ [ ] N/A   [ ] N/A

USED FORCE  [ ] YES  [ ] NO   TYPE: _____

PROCESSED EVIDENCE  [ ] YES  [ ] NO

---

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

| CHECK ONE | BADGE # | ID # | POST ASSIGN. # | POSITION |
|---|---|---|---|---|
| [ ] PRIMARY [ ] CAMERA |  |  |  |  |

DESCRIPTION OF INJURIES:

[ ] RESPONDER
[ ] WITNESS
[ ] VICTIM

[ ] N/A

[ ] HOSPITALIZED   [ ] TREATED & RELEASED   NAME/LOCATION OF HOSP./TREAT. FACILITY
[ ] REFUSED TREATMENT
[ ] DECEASED DATE: _____ [ ] N/A   [ ] N/A

USED FORCE  [ ] YES  [ ] NO   TYPE: _____

PROCESSED EVIDENCE  [ ] YES  [ ] NO

---

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

| CHECK ONE | BADGE # | ID # | POST ASSIGN. # | POSITION |
|---|---|---|---|---|
| [ ] PRIMARY [ ] CAMERA |  |  |  |  |

DESCRIPTION OF INJURIES:

[ ] RESPONDER
[ ] WITNESS
[ ] VICTIM

[ ] N/A

[ ] HOSPITALIZED   [ ] TREATED & RELEASED   NAME/LOCATION OF HOSP./TREAT. FACILITY
[ ] REFUSED TREATMENT
[ ] DECEASED DATE: _____ [ ] N/A   [ ] N/A

USED FORCE  [ ] YES  [ ] NO   TYPE: _____

PROCESSED EVIDENCE  [ ] YES  [ ] NO

---

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
|  |  |  | Correctional Officer | M | Hispanic | S/S/H |

| CHECK ONE | BADGE # | ID # | POST ASSIGN. # | POSITION |
|---|---|---|---|---|
| [ ] PRIMARY [ ] CAMERA |  |  |  |  |

DESCRIPTION OF INJURIES:

[ ] RESPONDER
[ ] WITNESS
[ ] VICTIM

[ ] N/A

[ ] HOSPITALIZED   [ ] TREATED & RELEASED   NAME/LOCATION OF HOSP./TREAT. FACILITY
[ ] REFUSED TREATMENT
[ ] DECEASED DATE: _____ [ ] N/A   [ ] N/A

USED FORCE  [ ] YES  [ ] NO   TYPE: _____

PROCESSED EVIDENCE  [ ] YES  [ ] NO

# EXHIBIT 6

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

03-03 NB-10-018

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| D-87412 | MENCHACA | | | CSP-S.Q. | 4-N-65 | |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR§ 3016 (b) | POSSESSION OF A HYPODERMIC SYRINGE | NORTH BLOCK | 10-20-03 | 1145 hrs. |

CIRCUMSTANCES

On Monday, October 20, 2003, at approximately 1145 hours, while conducting a search of cell 4-N-65, assigned to inmate Menchaca, D-87412 and inmate Mendez, P-95120, I discovered drug paraphernalia.

During the course of my search, I discovered a hypodermic syringe. The syringe was hidden inside a plastic bottle containing skin care lotion, which was located on an inmate-manufactured shelf in the right rear corner of the cell adjacent to the sink. The syringe was inmate-manufactured and consisted of a syringe needle attached to a plastic barrel, which was inserted into a rubber tube measuring approximately 1 3/4 inch long and fastened with a rubber band to create a tight seal. The other end of the rubber tube had a plastic plug inserted and was also wrapped with a rubber band to create a seal. The tube was used like an eyedropper squeeze top, which allowed the user to expel liquid from the barrel of the syringe out through the needle. The needle end was covered with a ball-point pen cap. The syringe was wrapped inside tissue paper and then sealed inside a cut off finger portion of a latex rubber glove.

Also discovered within the cell were two latex rubber gloves that were missing finger portions. I took control of the syringe and processed it per institutional procedure. Both inmates were later ordered to submit to urinalysis testing to which they complied.

Inmate Menchaca is aware of this report and is NOT a participant in the Mental Health Delivery System.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ M. PILACELLI, I.S.U. Officer | 10-22-03 | 0294 | S/S/H |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | DATE | LOC. |
|---|---|---|---|---|
| ▶ R. HILLIARD, Corr. Sergeant | 10-23-03 | | | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE  ☑ SERIOUS | 2-2 | 10/24/03 | ▶ P.L. SPEER, CAPTAIN | ☐ HO  ☑ SHO  ☐ SC  ☐ FC |

| COPIES GIVEN INMATE BEFORE HEARING | | | | |
|---|---|---|---|---|
| ☑ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
| | ▶ | 10-28-03 | 1460 | N/A |
| ☐ INCIDENT REPORT LOG NUMBER: N/A | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
| | ▶ N/A | | | ▶ | | |

HEARING

SEE ATTACHED RVR PART C

REFERRED TO ☐ CLASSIFICATION  ☐ BPT/NAEA

| ACTION BY (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| ✓ KELLEY    LT | ▶ | | |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ J.W. Reid, Facility Captain(a) | 11-10-03 | ▶ R.A. Darany | 11/12/03 |

| ☑ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| | ▶ C. Grier Jr C/O | 11-13-03 | 11: |

CDC 115 (7/88)

STATE OF CALIFORNIA                                    DL ARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C                        PAGE   1   OF   1

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| MENCHACA | D-87412 | 03-03-NB-10-018 | SQSP | 11/8/03 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ CDC 115 CIRCUMSTANCES | ☒ HEARING | ☐ I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

The hearing was convened on November 8, 2003, at approximately 0800 hours when I introduced myself to inmate Menchaca D-87412 as the Senior Hearing Officer for this disciplinary.

**Staff Assistant:** Inmate Menchaca is not a participant in the Mental Health Delivery System. Assignment of a Staff Assistant was considered unnecessary as his current mental health does not impair his ability to comprehend either the charges or the disciplinary process. In the hearing, Inmate Menchaca agreed that he speaks English, is literate, the issues are not complex and a confidential relationship is not required. Staff Assistant will not be assigned.

**Hearing:** Inmate Menchaca stated he was in good health with normal vision and hearing. Inmate Menchaca acknowledged that he received copies of the following documents more than 24 hours in advance of the hearing: CDC-115 and the CDC-115A. These reports as well as the disciplinary charge of "POSSESSION OF A HYPODERMIC SYRINGE" were reviewed with inmate Menchaca in the hearing. He stated that he understood both and that he was prepared to begin the hearing.

**Due Process:** The disciplinary was served on the inmate within 15 days of discovery and the hearing was held within 30 days of service. The inmate received his copies of all documents more than 24 hours in advance of the hearing. There are no due process issues.

**Investigative Employee:** An IE was not assigned as the issues are not complex and the available information is sufficient. Per the CDC 115-A and his statements in the hearing, Inmate Menchaca has not requested IE assignment.

**Request for Witnesses:** Inmate Menchaca waived all witnesses and the SHO requested none.

**Plea:** "Not Guilty."

**Hearing testimony:** Inmate Menchaca gave the following testimony as his defense: "After they searched our cell they left a property receipt for property they had taken. They did not list any hype kit. We didn't know anything about a hype kit until we received the CDC-115 nine days later."

**Finding:** Guilty of the Div. D (2) offense POSSESSION OF ANY CONTAINER, DEVICE, CONTRIVANCE, INSTRUMENT OR PARAPHERNALIA INTENDED FOR UNLAWFUL INJECTION OR CONSUMPTION OF NARCOTICS, DRUGS OR ALCOHOLIC BEVERAGES. Per CCR 3016(b) possession includes actual possession as well as constructive possession. *Constructive possession* means one person retains control or ownership while it is in the actual possession of another. Each inmate has an assigned area of responsibility and anything found within this area of responsibility is presumed to be in his possession. CCR 3016(b) defines paraphernalia in terms of H&S 11014.5: *drug paraphernalia* means all equipment, products and materials of any kind which are designed for use or marketed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance. For CDC, paraphernalia also includes anything with such uses for controlled medications and alcohol. This finding is based upon the following preponderance of evidence:

A. The testimony of OFFICER M. PILACELLI in the disciplinary report of October 20, 2003 wherein OFFICER PILACELLI testifies that on October 20, 2003 he searched cell 4N65 and during this search he discovered on inmate manufactured hypodermic syringe.
B. The hypodermic syringe was hidden inside a plastic bottle containing skin care lotion.
C. The plastic bottle was located on a shelf adjacent to the sink in a common area of the cell and both inmate Menchaca and his cell partner inmate Mendez P-95120 had equal accessibility to the hypodermic syringe.

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| V. Kelley | | Correctional Lieutenant | 11/8/03 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
| | C. Glaw  fu  C/o | 11/13/03 | 11-30 |

STATE OF CALIFORNIA
RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS

PAGE __2__ OF __2__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| MENCHACA | D-87412 | 03-03-NB-10-018 | SQSP | 11/8/03 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ CDC 115 CIRCUMSTANCES | ☒ HEARING | ☐ I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

D. All inmates are assigned areas within their living space for storage of personal property. Any contraband found within this area is considered the responsibility of that inmate. If this area is shared with another inmate, the inmates are jointly responsible with reasonable evidence both inmates were aware of its presence.
E. SHO does not find inmate's defense that Officer Pilacelli failure to list the hypodermic syringe on the "confiscated property receipt" does not diminish inmate Menchaca's responsibility or is a violation of his due process in this hearing.

**Disposition:** Assessed **90** days credit forfeiture for this Div. D offense. Inmate Menchaca was informed that his credit restoration period began October 20, 2003 and this restoration period is a minimum of six months (if within 90 days of scheduled release, the minimum is reduced to 60 days). If he is found guilty of any administrative or serious CDC-115 issued during this credit restoration period, he forfeits his eligibility for restoration. If he completes this restoration period disciplinary free, he may request a classification review. Classification will make the final determination whether he is eligible for restoration or request an additional period of disciplinary free conduct. Appeal rights were explained. Inmate Menchaca was referred to CCR §3084.1 and following for additional information on appeal procedures.

**Additional penalties:** Per CCR Section 3315(f)(4)(A) Inmate Menchaca is ordered to participate in mandatory random drug testing a minimum of one time per month for a period of one year, effective November 8, 2003 through November 8, 2004.

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| V. Kelley | | **Correctional Lieutenant** | 11/8/03 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) C. Green C/o | DATE SIGNED: 11/13/03 | TIME SIGNED: 11:30 |

SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| D-87412 | MENCHACA | CCR§ 3016 | 10-20-03 | CSP-S.Q. | 3-03-N5-10-018 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☑ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| ☐ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▸ | N/A | DATE |
|---|---|---|---|
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▸ | | DATE |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|

| ☐ **I REVOKE** my request for postponement. | INMATE'S SIGNATURE ▸ | DATE |
|---|---|---|

## STAFF ASSISTANT

| STAFF ASSISTANT ☐ REQUESTED ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▸ | DATE |
|---|---|---|

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| ☑ NOT ASSIGNED | REASON DNm or per CCR 3315 (d) 2 | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE ☐ REQUESTED ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▸ | DATE |
|---|---|---|

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| ☑ NOT ASSIGNED | REASON DNm or per CCR 3315 (d) ( | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
☐ REPORTING EMPLOYEE   ☐ STAFF ASSISTANT   ☐ INVESTIGATIVE EMPLOYEE   ☐ OTHER _____   ☑ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| _____ | ☐ | ☐ | _____ | ☐ | ☐ |
| _____ | ☐ | ☐ | _____ | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE ▸ | DATE |
|---|---|---|

| ☑ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) | TIME 0600 | DATE 10-30-03 |
|---|---|---|---|

CDC 115-A (7/88)

— If additional space is required use supplemental pages —

88 86095

**EXHIBIT 7**

D87412STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128 A (8-87)

NAME AND NUMBER          MENCHACA          D87412          RA206L

On October 2, 2001, at approximately 1328 hours, while performing my duties, I attempted to interview Northern affiliated inmates. I gave Inmate MENCHACA, D87412 a direct order to report to the office to be interviewed alone. Inmate MENCHACA refused. I then informed Inmate MENCHACA that he would be receiving a 128A for refusing a direct order and that continued refusal could result in further disciplinary action.

Orig.: Central File
cc:    Unit File
       CC-I
       Inmate
       Writer

DATE    10/2/2001

Refusing to Interview

*J.H. Frye CC I*

J.H. Frye
Correctional Counselor I
CTF-North

COUNSELING CHRONO

:   Inmate
:   Writer

TE    11-01-00

CTF Central    CUSTODIAL COUNSELING

ATE    3-10-94          (CIRCUMVENTING THE MAIL)          CUSTODIAL COUNSELING

      2-6-89                                              CUSTODIAL COUNSELING
                                                          CUSTODIAL COUNSELING

DISCIPLINARY

STATE OF CALIFORNIA                                                                                      DEPARTMENT OF CORRECTIONS
                                                                                                        CDC-128 A (8-87)

NAME and NUMBER      **MENCHACA**                        **D-87412**              **A-307L**

Inmate MENCHACA, D-87412, A-307L, Position #IDLTC.002, assigned to Inmate Day Labor (IDL) at CTF-Central Door Project
has been counseled on their job expectations and responsibilities due to the unauthorized alterations done to the doors installed
by IDL, any further unauthorized alterations will result in disciplinary action/or immediate termination of the Inmate Day Labor
Program.

I have read and understood this Counseling Chrono: *Gerardo Menchaca*   DATE: 11-1-00

                                                    Inmate Signature

*R. Salas*      C/O                                 *Jack Oshberg*

R. SALAS, Correctional Officer                      JACK OSHBERG
IDL Officer                                         CSI
CTF-Tri-plex                                        CTF-Tri-plex

ORIG   :  C-File
cc     :  Unit File
       :  CC-I
       :  Inmate
       :  Writer

DATE   11-01-00                                         CTF Central    CUSTODIAL COUNSELING

                                                                       CUSTODIAL COUNSELING

ATE    3-10-94            (CIRCUMVENTING THE MAIL)                      CUSTODIAL COUNSELING
       1/7/93

       2-6-89                                                          CUSTODIAL COUNSELING
                                                                       CUSTODIAL COUNSELING

                         **DISCIPLINARY**

DEPARTMENT OF CORRECTIONS
CDC 128 A (8-87)

STATE OF CALIFORNIA

**NAME and NUMBER**        **MENCHACA    (H)    D-87412        FA2-119**

On 3-10-94, at approximately 1443 hours, while conducting a routine search of inmate mail, I discovered a letter addressed to inmate MENCHACA (D-87412).    During the search I discovered the letter was not from Gloria Lopez, but from an unnamed inmate at  Corcoran Prison.  MENCHACA has been verbally counseled and is aware that further actions of this nature to circumvent the mail system will result in progressive disciplinary action.

ORIG:  Central File
  cc:   Counselor
        Writer
        Inmate

P. RANZANY
Correctional Officer #36410
A-Facility
SAC

ATE    3-10-94            **(CIRCUMVENTING THE MAIL)**            **CUSTODIAL COUNSELING**
       1/7/93
                                                                **CUSTODIAL COUNSELING**
       2-6-89                                                    **CUSTODIAL COUNSELING**

**DISCIPLINARY**

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128 A (8-87)

**NAME and NUMBER**   MXXXXCA   OIX# D-87412   Housing C2-129L

On Thursday 1/7/93 at approximately 0900 hrs,while preforming my duties as the Pre-Vocational Instructor, Inmate MXXXXCA # D-87412 ,out of C2-129L failed to report to his assignment. Work change officers reviewed the Daily Priority Ducat List,contacted the housing unit,and called for Inmate MXXXXCA on the yard all of which produced negative results.This willful violation of Director's Rule 3041(B) cannot be tolerated.Any further violations can result in a CDC-115.Inmate MXXXXCA will receive an (A) day for this date.Inmate MXXXXCA is aware of this CDC-128A.

Original:Central File
CC:Program Lieutenant
:Education Department
:Housing Unit Officer
:Inmate

J.P. Blanvey

J.P. BLANVEER, "C" Pre-Vocational Instructor

**DATE**

1/7/93

2-6-89

**DISCIPLINARY**

CUSTODIAL COUNSELING
CUSTODIAL COUNSELING

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128 A (8-87)

**NAME and NUMBER**    MENCHACA, D-87412, B6-2080

On Monday, 6 February 1989, at approximately 1652 hours, while conducting my duties as Floor Officer in Building six (6) and during the 1652 institutional standing count, Inmate MENCHACA, D-87412, B6-2080, refused to stand for the 1652 institutional standing count. This is in direct violation of "B" Facility general rules for 1630 standing count and Directors Title 15 Rule 3017. Inmate MENCHACA is aware of this report and that any further violations of this nature could result in the issuance of a CDC-115.

Original:    Central File
CC:    Counselor
    Inmate
    Writer

C/O M. Ahlers

C/O M. Ahlers
Floor Officer B6, 3/w

DATE    2-6-89

**DISCIPLINARY**

**CUSTODIAL COUNSELING**