GERARDO JERRY MENCHACA
D-87412, 3C-38 LOW
SAN QUENTIN STATE PRISON
SAN QUENTIN, CA 94974
IN PRO SE

**FILED**

JUN 19 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GERARDO JERRY MENCHACA | No. C 07-4051 RMW (PR) |
| Petitioner, | PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER TO THE ORDER TO SHOW CAUSE; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| ROBERT AYERS, Warden, | |
| Respondent. | |

## INTRODUCTION

Petitioner, Gerardo Menchaca is a California state prisoner proceeding pro se in this habeas corpus matter in which he challenges the Board of Parole Hearings' May 12, 2006 decision denying him parole.

The state court's denial of his state habeas petition was an unreasonable application of the United States Supreme Court law, and this Court should grant the petition.

## TRAVERSE

Petitioner, Gerardo    Menchaca, as a Traverse to the Respondent's Answer to the Order to Show Cause states:

1. Due to the allegations set forth in the petition for writ of habeas corpus and this traverse, Petitioner is unlawfully in the custody of the California Department of Corrections and Rehabilitation. Petitioner has been incarcerated since June 1, 1991. In 1992, he was convicted of second-degree

murder and was found not to have used a weapon or have concealed a weapon at the time of the commitment offense. Petitioner was sentence to 15 year-to-life plus one year for a prison prior. With custody credit, petitioner became eligible parole after serving two-thirds (2/3) of the 16 years minimum. Petitioner's Minimum Eligible Parole Date is set at February 1, 2002. The purpose of parole is to "help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed." (Morrissey v. Brewer (1972) 408 U.S. 471, 477.) Release on parole is said to be the rule, rather than the exception (In re Smith (2003) 114 Cal.App.4th 343, 351, citing Penal Code, § 3041 subd. (a)) and the Board is required to set a release date unless it determines that "the gravity of the current convicted offense ... is such that consideration of the public safety requires a more lengthy period of incarceration ...." (Pen. Code, § 3041 subd. (b).)

2.  Petitioner agrees with the allegation set forth in Paragraph 2 of the Answer.

3.  Petitioner disagrees with the allegation set forth in Paragraph 3 of the Answer that he does not have a liberty interest in parole. The Ninth Circuit Court of Appeals has held that California's parole scheme creates a cognizable liberty interest in parole because Penal Code Section 3041 uses mandatory language and is similar to the Nebraska and Montana statutes addressed in Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7 (1979) and Board of Pardons v. Allen, 482 U.S. 369, 371 (1987). As the Ninth Circuit Court explained: "Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process," and that interest arises "upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 914-915 (9th Cir. 2003). See

Sass v. California Board of Prison Terms (9th Cir. 2006) 451 F.3d 1123.

4.  Petition denies the allegation set forth in Paragraph 4 of the Answer that he was provided a hearing that comported with due process.

5.  Petitioner denies that allegation set forth in Paragraph of the Answer. The Board of Parole Hearings may not make a decision that is "otherwise arbitrary." Irons v. Carey. 479 F.3d 657, 662 (9th Cir. 2007), citing Sass, 461 F.3d at 1128-29 and Superintendent v. Hill, 472 U.S. 445, 457 (1985). Parole suitability is "framed by the statutes and regulations governing parole suitability determinations in the relevant state." The Court must "look to California law to determine the findings that are necessary to determine whether the state court decision holding that these findings were supported by 'some evidence' ... constituted an unreasonable application of the 'some evidence' principle articulated in Hill." (Irons, Id.)

6.  Petitioner admits the allegations set forth in Paragraph 6 of the Answer but denies that Board's version of the commitment offense is accurate. Petitioner and Hector Oropeza were charged with first degree murder. The jury did not believe the prosecutor's theory of the events that resulted in Richard Figueroa being stabbed by Hector Oropeza. Both defendants were not found to have used a weapon or have concealed a weapon at the time of the commitment offense and it is impossible to know what the jury found to be true. Petitioner's defense was that he did not stab the victim and only tried to break up the fight between Figueroa and Oropeza, which was initiated by Richard Figueroa when he got out of his car and met Oropeza at the back of Petitioner's car and started to argue and then fighting. Furthermore, it is not known what the jury found to be the number of stab wounds. There was testimony of a two hour surgery which included open heart surgery and many incision wounds. At least ten of the wounds were superficial or defense wounds.

Petitioner's Traverse

Menchaca v. Ayers
No. C 07-4015 RMW (PR)

7.  Petitioner admits to the allegation set forth in Paragraph 7 of the Answer but denies that his juvenile record, which involves a car accident when three of his friends where horse-playing in the back seat of the car, causing Petitioner to wreck, killing one of back seat passengers when the car flipped over, resulting in a vehicle manslaughter conviction, and his 20 plus year old adult record now supports a finding of unsuitability. The Board is exercising more authority than it is given under Cal. Penal Code § 3041(a) and Cal. Code Regs., tit. 15 § 2408. The fact that Petitioner was on probation or parole when the crime was committed, or had a pattern of escalating crime does not render him unsuitable. The Board is to apply the Sentencing Rules for the Superior Courts when using the factors described in Paragraph 7.

8.  Petitioner admits to the allegations set forth in Paragraph 8 of the Answer, but denies he had insufficiently participated in beneficial self-help programs. He further denies that rule violation reports relied on were sufficient to deny parole. The rules violations were minor in gravity, and had already been used to deny good time credit. The rule violations are being challenged in the federal court. Even if the courts do not reverse the rule violations guilty verdict, the rule violations do not automatically support a finding of unsuitability. (See Cal. Code Regs., tit. 15 § 2410.)

9.  Petitioner admits to the allegation set forth in Paragraph 9, but denies that voiced opposition to parole is an enumerated unsuitability factor (Cal. Code Regs., tit. 15 § 2402, subd (c)) and such argument is not evidence of unsuitability. (People v. Breaux (1991) 1 Cal.4th 281, 313 ["it is axiomatic that argument in not evidence"].)

10.  Petitioner agrees with part of the allegations set forth in Paragraph 10 of the Answer that the Board noted that Petitioner had housing and job offers and marketable skills, and commended him on his accomplishments. However denies

that he has not participated in AA sufficiently. The parole agency provides contact with AA outside the prison.

11.   Petitioner admits to the allegation set forth in Paragraph 11 of the Answer.

12.   Petitioner admits, in part, the allegation set forth in Paragraph 12 of the Answer but denies that superior court's decision was not an unreasonable application of clearly established United States Supreme Court law.

13.   Petitioner agrees with Paragraph 13.

14.   Petitioner agrees with Paragraph 14 of the Answer that he has exhausted his claims, but denies Respondent's assertion that he has not exhausted his claims to the extent they can be more broadly interpreted.

15.   Petitioner denies the allegation set forth in Paragraph 15 of the Answer that he has failed to state or established any grounds for federal habeas corpus relief.

16.   Petitioner denies respondent's assertion set forth in Paragraph 16 of the Answer that the Board failed to consider all relevant post-conviction factors and did not deprive a fair and meaningful hearing.

17.   Petitioner denies the assertions set forth in Paragraph 17 of the Answer that the probation report was reliable. The probation report derived from the preliminary hearing, which excluded testimony which supported the defense theory of provocation and unintentional killing. Furthermore, the probation report fails to mention that the prosecutor's witnesses admitted to lying and was impeached.

18.   Petitioner denies the allegation set forth in Paragraph 18 of the Answer. Irons v. Carey (9th Cir. 2007) 479 F.3d 658 ("Irons") is the Ninth Circuit's third in a line of cases that includes Biggs v. Terhune (9th Cir.

2003) 334 F.3d 910 ("Biggs"), and Sass v. California Board of Prison Terms
(9th Cir. 2006) 461 F.3d 1123 ("Sass"), looked at the continued use of the
commitment offense  to justify a denial of parole. The Ninth Circuit explained
in Irons  why Biggs was not overturned by Sass, and re-emphasized that continued
use of commitment offense facts to find such an inmate unsuitable for parole
may constitute a due process violation after the minimum term has been served.
Petitioner had served his minimum term of 10.66 years in prison.

    19.  Petitioner denies the assertion set forth in Paragraph 19 of the
Answer. Petitioner has a due process liberty interest in "not being denied
parole for arbitrary or impermissible reasons" [Meachum v. Fano, 427 U.S. 215,
226 (1976)] or as a result of "flagrant or unauthorized actions." [Monroe v.
Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991)] The Board fails to give
individualized discretion to inmates serving term-to-life sentences by invoking
the crime itself to deny parole in virtually every case it considers.

    20. Petitioner denies the allegation set forth in Paragraph 20 of the
Answer.

    21.  Petitioner denies the assertions set forth in Paragraph 21 of the
Answer that Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003) and the
"particularly egregious" standard established by the California Supreme Court
is inapposite. The Board clearly relied on the commitment offense and pre-
commitment factors to deny parole. That is the only authority given to the
Board by Penal Code § 3041(a). Petitioner had already been punished for his
postconviction disciplinary actions and none of them where for violent behavior.
They are being challenged in the court and unreliable to determine that
Petitioner poses an "unreasonable threat" to the public. Cal. Code of Regs.
tit 15 § 2404 gives a whole list of aggravating circumstances that authorizes
the Board to aggravate the base term for one year. Section 2410 subd. (d)

provides the Board direction on when not to grant annual post-conviction credit "in the case of any prisoner who commits serious (as defined in 15 CCR Section 3315) or numerous (more than three) infractions of departmental regulations, violates any state law, or engages in other conduct which could result in recession of a parole date (see Section 2451) unless the panel finds evidence in mitigation and supports such findings with a statement of its reasoning." The Board has implemented a sub rosa policy of denying parole where the regulations only allow for a denial post-conviction credits.

22. Petitioner denies the assertions set forth in Paragraph 22 of the Answer. See Cal. Code of Regs tit. 15 2410 (d).

23. Petitioner denied the assertions set forth in Paragraph 23 of the Answer. Petitioner never received notice that the district attorney or police department's opposition to his parole can be used to deny parole. Voiced opposition to parole is not an enumerated unsuitability factor (Cal. Code Regs., tit 15 2402 subd. (c) and such argument is not evidence of unsuitability. (People v. Breaux (1991) 1 Cal.4th 281, 313 ["it is axiomatic that argument is not evidence].)

24. Petitioner denies the assertion set forth in Paragraph 24 of the Answer. The Board is not allowed to used elements that are unproven or unreliable to deny parole. See Aprendi v. New Jersey, 530 U.S. 466, 490; and Cal. Penal Code § 190.4.

25. Petitioner denies the assertions set forth in Paragraph 25 of the Answer. The Board did not accept as true the findings of the trail court. The trial court had determined that Petitioner did not use a weapon during the commission of the crime, yet the Board stated that Petitioner stabbed the victim as a reason to deny parole. The jury rejected the prosecution first degree murder theory, yet Petitioner has gone beyond the second degree murder matrix

when custody credits are applied.

26. Petitioner denies the assertions set forth in Paragraph 26 of the Answer. The Board has denied parole to 100 percent of those that come before it based on the crime being particularly egregious. California law provides a Life Without the Possibility of Parole if "[T]he murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity. As used in this section, the phrase 'especially heinous, atrocious ir cruel, manifesting exceptional depravity' means a conscienceless  or pitiless crime that is unnecessarily torturous to the victim." (Cal. Penal Code § 190.2 subd. (14).) Petitioner crime does not fit that description, nor was he ever charged with this special circumstance. For the Board to find every crime exceptional deems the meaning unconstitutionally vague.

27. Petitioner denies the assertion set forth in Paragraph 27 of the Answer. The fact that the victim's nephew identified himself as the brother in order to attend and speak at the hearing is a clear indication that he knew that his participation was unauthorized by law. Petitioner wishes to preserve this issue for civil rights violation charges on the nephew to preclude him from participating in future hearings.

28. Petitioner denies the allegation set forth in Paragraph 28 of the Answer. The court may order the immediate release of Petitioner.

29. Except as expressly admitted above, Petitioner denies, generally and specifically , every allegation of the Answer.

Petitioner respectfully requests that this Court grant the Petition for Writ of Habeas Corpus.


Dated: June 14, 2008                              Respectfully submitted

                                                  Gerardo Menchaca
                                                  Gerardo J. Menchaca
                                                  In Pro Se
Petitioner's Traverse                                    Menchaca v. Ayers
                                                  No. C 07-4015 RMW (PR)

8

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

## THE HABEAS PETITION SHOULD BE GRANTED BECAUSE THE STATE COURT DECISION WAS CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, OR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS

### A. PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN PAROLE AND A RIGHT TO A PAROLE HEARING THAT COMPLIES WITH DUE PROCESS.

It is appropriate to look to lower Federal Court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of the law. See Duhaime v. Ducharme, 200 F. 3d 597, 598 (9th Cir. 1999)

The Ninth Circuit has held that California's parole scheme creates a cognizable liberty interest in parole because Penal Code Section 3041 uses mandatory language and is similar to the Nebraska and Montana statutes addressed in Greenholtz and Allen respectively. [Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7 (1979) and Board of Pardons v. Allen, 482 U.S. 369, 371 (1987)] As the Ninth Circuit has explained: "Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process," and that interest arises "upon the incarceration of the inmate." Biggs v. Terhune, 334 F. 3d 910, 914-915 (9th Cir. 2003). See Sass v. California Board of Prison Terms (9th Cir 2006) 451 F. 3d 1123.

The Board may not make a decision that is "otherwise arbitrary." Irons v. Carey, 479 F. 3d 657, 662 (9th Cir. 2007), citing Sass, 461 F. 3d at 1128-29 and Superintendent v. Hill, 472 U.S. 445, 457 (1985). Parole suitability is "framed by the statutes and

regulations governing parole suitability determinations in the relevant state." The Court must "look to California law to determine the findings that are necessary to determine whether the state court decision holding that these findings were supported by 'some evidence'…constituted an unreasonable application of the 'some evidence' principle articulated in Hill." Irons, Id. "Some evidence" that an inmate is currently dangerous must support a decision to find an inmate is unsuitable for parole in accordance with California statutes and regulations.

In In re Dannenberg (2007) 156 Cal. App. 4th, 1387, Dannenberg "struck multiple blows to his wife's head with a pipe wrench. Bleeding profusely, she then 'fell or was pushed' into a bathtub full of water, where she drowned/" (Id. at p. 1394.) The court acknowledged that second-degree murder demonstrated a callous disregard for human suffering; yet, it concluded that the offense did not provide the requisite evidence that Dannenberg was presently dangerous. (Id. at p. 1398.)

The Court of Appeal found that "[n]o evidence in the record…supports a conclusion…that Dannenberg currently poses an unreasonable risk of danger to society if released." (In re Dannenberg, supra, 156 Cal. App. 4th at p.1391.)

This is also illustrated by Hayward v. Marshall (9th Cir. 2008) _ F. 3d ___ [2008 WL 43716] In Hayward, the court ruled that the Governor's 2003 reversal of parole based on the gravity of the petitioner's 1978 second-degree murder violated due process. (2008 WL 43716 at *8.) Hayward demonstrated the Biggs warning that the parole authority's "continued indefinite reliance on an unchanging factor, such as the circumstances of the commitment offense, pre-conviction criminal history, or other past conduct," may ripen

into a due process violation in the face of a longstanding showing of reform and rehabilitation. (2008 WL 43716 at *7.)

Similarly, when viewed fairly and in context, there is no evidence that supports a determination that petitioner's release would unreasonably endanger public safety.

## B. THE CALIFORNIA PAROLE SCHEME REQUIRES THAT PAROLE SHALL NORMALLY BE GRANTED

The California legislature has clearly expressed its intent that when murderers-who are the great majority of inmates serving indeterminate sentences-approach their minimum eligible parole date, the Board "shall normally set a parole release date." (Pen. Code Section 3041, subd. (a).)

The Board's authority to make an exception based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is "normally" to be granted.

In 2006, 4,657 parole hearings were conducted. Parole was granted to only 23 inmates. The Board of Parole Hearings combined with the governor rejected 99.5 per cent of lifer's applications for parole. [Source: California Department of Corrections and Rehabilitation; Governor's Office, as reported in San Francisco Chronicle]

Petitioner contends that as a matter of law and logic, a parole granting rate of one half of one per cent fails to comply with the mandate of Penal Code Section 3041 (a) which requires that parole is normally to be granted. Petitioner maintains that applying the exception of Section 3041 (b) to well over ninety percent of the applicants considered by the Board violates due process.

### C. THE "SOME EVIDENCE" STANDARD REQUIRES THAT THERE BE SOME EVIDENCE THAT IS PROBATIVE OF CURRENT DANGEROUSNESS. THE BOARD'S FINDINGS MUST BE SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE

Parole unsuitability factors must be supported by a preponderance of the evidence. In re Rosenkrantz (2002), 29 Cal. 4th 616 at p. 670. The board failed to state that its findings were made in accordance with this burden of proof.

Court's reviewing the board's determinations have held that due process requires that "some evidence" support the board's determination and that the evidence relied upon must possess "some evidence of reliability." Caswell v. Calderon, 353 F. 3d 832, 839 (9th Cir. 2004). See Cass v. Woodford, 2006 WL 1304953 at *9 (S.D. Cal. 2006)

It is not enough that there is some evidence to support the factors cited for denial of parole; that evidence must also rationally support the core determination required by the statute before parole can be denied, i.e. that a prisoner's release will unreasonably endanger public safety. In re Lee (2006) 143 Cal. App. 4th 1400, 1408.

Because the overarching consideration is public safety, the test in reviewing the Board's decision denying parole "is not whether some evidence supports the reasons [the board] cites for denying parole but whether some evidence indicates a parolee's release unreasonably endangers public safety." In re Barker (2007) 151 Cal. App. 4th 346, 366, italic omitted.)

The Federal "Some Evidence" standard as applied in Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F. Supp. 2d 1063 and Martin v. Marshall (N.D. Cal. 2006) 431 F. Supp. 2d 1038 finds that an aging commitment offense falls short of providing "some evidence" sufficient to justify a denial of parole. See also, Willis v. Kane (N.D. Cal. 2007) 485 F. Supp. 2d 1126.

Petitioner asserts that the "some evidence "standard is not appropriate at the fact finding level but only suitable for use by an appellate court in the context of reviewing lower court decisions. The Supreme Court explained in a plurality opinion that it has utilized the "some evidence" standard not as a standard of proof, but rather as a standard of review when examining an administrative record developed in an adversarial proceeding. Hamdi v. Rumsfield, 542 U.S. 5507, 124 S. Ct. 2633, 2651, 159 L. Ed. 2d 578 (2004), n. 8.

The state courts that adopted Hill's some evidence standard to review parole decision held that prisoners did **not** have a due process liberty interest in parole. In re Powell 45 Cal. 3d 894, 911 (1988) Because the contrary is now established (McQuillion, 306 F. 3d at 902; Rosenkrantz, 29 Cal. 4th at 621; see Sass, 461 F. 3d at 1128), due process certainly demands a finding of something more than "some" (any) evidence in the record to secure a vested liberty interest protected by the Due Process Clause.

No other state whose parole statutes provide a protected liberty interest in parole, or any defined liberty interest allow it to be extinguished by the mere presence of any evidence whatsoever. In Carrillo v. Fabian, 701 N.W. 2d 763 (2005), the Minnesota Supreme Court recently and explicitly held that the some evidence standard of review of a prison disciplinary action established in Hill is inapplicable to the review of a correctional agency's decision affecting an inmate's parole date in a state whose statutes provide a protected liberty interest in parole.

The court held, based on the tripartite test prescribed by the Supreme Court, that

the "substantial evidence" standard of review is requisite to provide adequate due

process protection.

In Santosky v. Kramer (1982) 455 U.S. 745, 767-769, 102 S. Ct. 1388, 71 L. Ed.

2d 599, the High Court explained:

> This Court has mandated an intermediate standard of proof-"clear and
> convincing evidence"-when the individual interest in a state proceeding
> are both "particularly important" and "more substantial than mere loss of
> money." "Addington v. Texas, 441 U.S., at 424, 99 S. ct., at 1808...the
> Court has deemed this level of certainty necessary to preserve fundamental
> fairness in a variety of government-initiated proceedings that threaten the
> individual involved with "a significant deprivation of liberty" of "stigma"
> [citations]...The extent to which procedural due process must be afforded
> the recipient is influenced by the extent to which he may be 'condemned
> to suffer grievous loss'" Goldberg v. Kelly, 397 U.S. 254, 262-263, 90 S.
> Ct. 1011, 1017-18, 25 L. Ed. 2d 287 (1970), quoting Joint Anti-Fascist
> Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S. Ct. 624, 646, 95
> L. Ed. 817 (1951) (Frankfurter, J. concurring).

Santosky v. Kramer, 455 U.S. 745, at 756, 758 (1982)

This Court should apply the clear and convincing or substantial evidence standard to

adjudicate petitioner's constitutional claims.

## D. THE BOARD'S RELIANCE ON THE COMMITMENT OFFENSE AND IMMUTABLE PRE-CONVICTION FACTORS TO DENY PAROLE VIOLATES PETITIONER'S DUE PROCESS RIGHTS

In Biggs v. Terhune (9th Cir. 2003) 334 F. 3d 910 the Ninth Circuit cautioned that

continued reliance on the circumstances of the offense could result in a due process

violation if the prisoner continually demonstrates exemplary behavior and evidence of

rehabilitation.

The Board's decision to deny parole in this case relied on the commitment offense

and petitioner's conduct prior to the commitment offense.

Petitioner is entitled to have his release date considered by a Board that is free from bias or prejudice. O'Bremski v. Maas, 915 F. 2d 418, 422 (9th Cir. 1990)

Petitioner was denied parole based on the gravity of the commitment crime and twenty plus years old pre-conviction offenses, the circumstances of which can never change. Therefore, the Board's continued reliance on the commitment offense and prior behavior will essentially convert petitioner's sentence of life with the possibility of parole into a sentence of life without the possibility of parole. Petitioner has no chance of obtaining parole unless the Board holds that his crime was not serious enough to warrant a denial of parole. Irons v. Warden, (E.D. Cal. 2005) 358 F. Supp. 2d 936, 947.)

The Board cited the "gravity" of the commitment offense in denying parole. "[T]he measure of atrociousness is not general notions of common decency or social norms for by that yardstick all murders are atrocious." In re Lee (2006) 143 Cal. App. 4th 1400, 1401. Viewed under the appropriate guidelines, petitioner's crime does not qualify as unusually calculated, cruel or callous. He did not taunt the victim or gloat over his distress. See People v. Misa (2006) 140 Cal. App.4th 937. 842-843.

The California Court of Appeal in In re Elkins (2006) 144 Cal. App. 4th discussed the use of the gravity of the commitment offense to support a denial of parole:

> "Scott II summarizes the law in this situation. 'The Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense 'alone' is correct [citation], but the proposition must be properly understood. The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being his 'Previous Record of Violence').
>
> Reliance on such an immutable factor 'without regard or consideration of subsequent circumstance' may be unfair [citation], and runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation. [citation]

The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. Thus, denial of release based solely on the basis of the gravity of the commitment offense warrants especially close scrutiny." (Scott II, supra, 133 Cal App. 4th at pp 594-595, fns. omitted.)

The Court of Appeal stated that "it violates due process to deny parole "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense." (Scott II, supra, 133 Cal. App 4th at p. 598)…"

The Court of Appeal in Elkins also observed: "We also take into account that whatever facts make a given offense aggravated or mitigated, compared to the hypothetical average are not overlooked or disregarded when the Board sets a release date…A release date is set by a calculation under matrixes Section 2403, subds. (b)-(f) that require the Board to weigh myriad facts of the offense that might be aggravating (Section 2404) or mitigating (Section 2405), including any factors that would have been considered by a judge in choosing a determinate sentence…Thus [the Board]…must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating release currently poses "an unreasonable risk of danger to society." (Section 2402, subd. (a); accord, Pen. Code, Section 3041, subd. (b))."

The Board's reliance on Petitioner's commitment offense, which took place over 15 years ago to deny parole, was unreasonable. A plethora of very recently issued California state and federal district court decisions uniformly holds that evidence of even

particularly egregious facts of commitment offenses is not tantamount to evidence of

undue current parole risk absent articulation of a nexus between those entities. <u>Willis v.</u>

<u>Kane</u>, 485 F. Supp. 2d 1126, 1135 (N.D. Cal. 2007) ["Notwithstanding the terrible nature

of the crime, the critical question the BPH was supposed to decide at the parole suitability

hearing was whether 'consideration of the public safety requires a more lengthy period of

incarceration for this individual'…Willis' 1983 crime did not provide sufficient evidence

to find him unsuitable for parole in 2003."] <u>Martin v. Marshall</u>, 431 F. Supp. 2d 1038,

1049 (N.D. Cal. 2006);

    <u>Blankenship v. Kane</u>, 2007 WL 1113798 at *10 (N.D. Cal. 2007) ["…the

California regulations require…some evidence that the prisoner poses a present danger to

society…continued reliance over time on an unchanging factor…the commitment

offense…does not provide evidence of a present danger to society"]; <u>Thomas v. Brown</u>,

2006 WL 3783535 at *6 (N.D. Cal. 20060]; <u>Rosenkrantz v. Marhsall</u>, 444 F. Supp 3d.

1963, 1086 (C.D. Cal. 2006)

## E. THE BOARD'S DETERMINATION THAT A CRIME IS PARTIUCLARY CRUEL OR EGREGIOUS IS MADE IN AN ARBITRARY AND UNCONSTITUTIONAL MANNER

    The Board's determination that petitioner's crime was especially cruel or

egregious is unconstitutionally vague and standard less. See <u>United States v. Doremus</u>

(9th Cir. 1989) 888 F. 2d 630, 634.The Board relies on any fact of the crime to bolster its

conclusion that the crime is particularly egregious. The Board makes a determination that

virtually ALL life crimes are particularly egregious.

    The board's characterization of petitioner's crime as exceptional was arbitrary since

the Board and governor routinely and invariably characterizes all offenses carrying life

terms as exceptional. Petitioner asks this Court to take judicial notice of the order in

**MIKE NGO On Habeas Corpus Superior Court of Santa Clara, No. 127611, August 30, 2007** where the Honorable Linda Condron found comprehensive evidence indicating that the state's Board of parole hearings completely disregards the detailed standards and criteria of the parole release statute, 15 CCR Section 2402 (c) and thereby denies prisoners' due process rights. The Honorable Judge Condron found:

> "In summary, when every single inmate is denied parole because his or her crime qualifies as a Section 2402(c) (1) exception to the rule that a parole date shall normally be set, then the exception has clearly swallowed the rule and the rule is being illegally interpreted and applied.
> When every single life crime that the Board examines is "particularly egregious" and "especially heinous, atrocious or cruel" it is obvious that the Board is operating without any limits and with unfettered discretion. "Based on the arbitrary characterization of every murder as being exceptional, the Board's decision denying parole for petitioner is per se invalid because he was denied his constitutional right to be heard by an impartial decision-maker. See <u>Withrow v. Larkin</u>, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) ("Not only is a biased decision maker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness.")

When an inmate is found suitable for parole, the Board does not deem the crime as particularly egregious. However, the governor when reviewing the Board's determination may disagree and consider the crime as particularly egregious and deny parole. At a subsequent hearing the Board may again classify the crime as particularly egregious.

The change in classification of the very same crime from being non-exceptional to particularly egregious demonstrates the arbitrariness of the classification process itself.

The Board's use of uncharged and unproven elements of his crime to continue denying parole violates petitioner's constitutional right to a jury trial. See <u>Aprendi v. New Jersey</u>, 530 U.S. 466, 490.

for a second degree murder and failed to analyze the crime in light of that fact. The respondent's position that petitioner who was convicted of second -degree murder may forever be denied parole based on some modicum of evidence that the crime rose to the level of a first degree murder with special circumstances, without acknowledging the fact that petitioner has already served the time for the most heinous first-degree described in the Board's own guidelines that do not preclude parole, should be seen as so ridiculous that simply to state it is to refute it. <u>In re Weider</u> (2006) 145 Ca. App. 4th, 570, 582-583. The Board should have weighed petitioner's crime against instances of first-degree murder with special circumstances in assessing the applicability of any Section 2402(c)(1) criteria.

## CONCLUSION

The Board failed to articulate what it is about petitioner's crime that outweighs all the statutorily mandated parole release standards. The Board systematically uses the fact of a murder conviction, without more, to keep prisoners locked up for the rest of their lives. The role of the parole board is not to resentence the prisoner according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether as of this moment, given the statutory factors, he should be released.

The Board stated no justifiable reasons for denying parole. "The evidence must substantiate the ultimate conclusion that the prisoner's release currently poses an unreasonable risk of danger to the public. It violates a prisoner's right to due process when the Board or Governor attaches significance to evidence that forewarns no danger

to the public or relies on an unsupported conclusion." <u>In re Tripp</u> (2007) 150 Cal. App. 4[th] 306, 313

DATED: *June 14, 2008*

                                  Respectfully submitted;

                                  Gerardo J. Menchaca
                                  Petitioner in Pro Se

# DECLARATION OF SERVICE BY MAIL

I, _____TONY  HERRERA_____, the undersigned, declare:
Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within.  My residence address is:

CDC No. _D61529_    Housing _4N-29L_
San Quentin State Prison
San Quentin, CA 94974

On _June 15_, _2008_, I served the following document(s):
Month/Day    Year

PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER TO THE ORDER TO SHOW CAUSE;
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
MOTION FOR RELIEF FROM DEFAULT IN FILING LATE

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

EDMUND G. BROWN JR
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA
DENISE A YATES
DEPUTY ATTORNEY GENERAL
455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

I swear under penalty of perjury that the foregoing is true of my own personal knowledge.  Executed on this _15th_ day of _June_, _2008_, at San Quentin, CA, County of Marin.

_____
Signature of declarant

Menchaca v. Ayers
No. C 07-4015 RMW (PR)