1

2

3

4

5                                                      *E-FILED - 7/8/09*

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   GERARDO JERRY MENCHACA,           )    No. C 07-04051 RMW (PR)
                                       )
12                    Petitioner,      )    ORDER DENYING PETITION FOR
       vs.                             )    WRIT OF HABEAS CORPUS
13                                     )
                                       )
14                                     )
     ROBERT AYERS, Warden,             )
15                                     )
                                       )
16                    Respondent.      )
                                       )
17   —————————————————————————

18        Petitioner, a California prisoner proceeding pro se, filed a writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254 challenging the finding by the California Board of Parole

20   Hearings ("Board") that petitioner is unsuitable for parole.  The court ordered respondent

21   to show cause why the petition should not be granted.  Respondent filed an answer and a

22   supporting memorandum of points and authorities addressing the merits of the petition.

23   Petitioner filed a traverse.  Having reviewed the papers and the underlying record, the

24   court concludes that petitioner is not entitled to habeas corpus relief and will deny the

25   petition.

26   ///

27   ///

28   ///

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Menchaca_order.wpd

1
**PROCEDURAL BACKGROUND**

2       In February 1992, petitioner was sentenced to 16 years to life, including a one year

3  enhancement for a prior felony, after being convicted of second degree murder.  (Resp't

4  Ex. 1 at 1-3.)  On May 12, 2006, petitioner was denied parole by the Board.  On

5  December 13, 2006, petitioner filed a writ of habeas corpus in the California superior

6  court, which was denied in a reasoned opinion on March 12, 2007.  On March 22, 2007,

7  petitioner filed a subsequent habeas petition in the California Court of Appeal, which was

8  summarily denied on April 23, 2007.  (Resp't Ex. 11 at 1.)  On April 30, 2007, petitioner

9  filed a petition for review with the California Supreme Court, which was summarily

10  denied on July 11, 2007.  (Resp't Ex. 13 at1.)  Petitioner filed the instant habeas corpus

11  petition on August 7, 2007.

12
**FACTUAL BACKGROUND**

13  A.      The Commitment Offense

14       The following summary of facts of petitioner's commitment offense is derived

15  from the Santa Clara County Probation Officer's Report.  (Resp't Ex. 3 at 2-3.)  While

16  driving his vehicle in the early morning of March 2, 1991, after a night of drinking beer

17  and bowling with his friend Hector Oropeza, petitioner became involved in a road rage

18  incident with a car driven by Susan Douglass.  Richard Figueroa, the victim, was a

19  passenger in Douglass' car.  After seemingly eluding petitioner, Douglass stopped in the

20  visitor's parking area of a friend's condominium complex.  Figueroa exited the car and

21  was in the process of moving the seat up to let out another passenger when petitioner

22  pulled up behind Douglass' car, blocking it.  Petitioner and Oropeza got out of the car,

23  rushed Figueroa and began attacking him.  After one or two minutes of assaulting

24  Figueroa, petitioner and Oropeza fled back to their car and drove off.  Figueroa got back

25  into Douglass' car, where Douglass noticed that Figueroa's sweater had many slits in it

26  and he was bleeding.  Figueroa then tried to get out of the car but collapsed to the

27  asphalt.  He was taken to San Jose Hospital Trauma Center by ambulance, where he

28  died.

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Menchaca_order.wpd

1        According to the autopsy report,

2        . . . Figueroa received 23 wounds to his body, 15 of which were actual stab
         wounds.  The other were lacerations or superficial incised wounds.  Evidence
3        indicated the possibility of more than one weapon having been used.  The
         stab wounds included four-and-a-half inch deep wounds which perforated
4        Figueroa's chest and left lung, chest and right lung, two stab wounds to his
         liver, one to his colon, and five to his intestines.  Cause of death was listed as
5        stab wounds of the head, chest, and abdomen.  The report also indicated that
         Figueroa received stab wounds to his left and right hands.

6

7    (Resp't Ex. 3 at 3.)

8    B.      May 12, 2006 Board Hearing

9            Petitioner had been incarcerated for over fourteen years at the time of his May 12,

10   2006 parole suitability hearing.  He was represented by counsel at the hearing.  (Resp't

11   Ex. 2 at 2.)  Petitioner presented evidence that he had availed himself of many self-help,

12   self-improvement, and community programs in prison.  (Id. at 46-51.)  However,

13   petitioner also admitted that had received three disciplinary violations (CDC 115s) since

14   his last hearing in October 2001.  (Id. at 42-43.)  The first CDC 115 was in October 2003,

15   for possession of a hypodermic syringe.  (Id. at 43.)  The next CDC 115 was in January

16   2005, for possession of methamphetamine.  (Id. at 44.)  The most recent CDC 115 was in

17   November 2005, also for possession of methamphetamine.  (Id.)  The Board also

18   reviewed petitioner's prior criminal record:

19       . . . And it looks like you were first brought to the attention of the authorities
         on June 2, 1976, for a battery.  And you were sent to the Boys Ranch later
20       after committing a burglary.  You escaped from the Boys Ranch and
         subsequently sent to the Youth Authority. . . .  And you were paroled from
21       CYA May 7, 1980, but you were remanded back into their custody in October
         '71 for driving under the influence of liquor or drugs and a hit-and-run that
22       resulted in the death or injury. . . .  And you were discharged from CYA on
         August 2, 1985.  Your first San Jose P.D. arrest as an adult was in, as
23       indicated here, was July 16, '85 and it was for H and S, controlled substance
         for sale. . . .  And you got three years probation, a year in jail, and a fine of
24       $750.  And on July 25, 1987, you were arrested by San Jose P.D. for battery
         on a police officer, possession of PCP for sale, possession of controlled
25       substance, obstruction, and resisting a police officer.  In the Court the charges
         were dismissed; however, the original probation was revoked and you were
26       sent to CDC for a three-year term.  You paroled from CDC in November of
         '89.

27

28   (Id. at 29-31.)

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Menchaca_order.wpd

1       The Board then heard closing statements, first by the Deputy District Attorney

2   opposing parole, then by counsel for petitioner in favor of parole.  Finally, the Board

3   heard statements opposing parole from the victim's family - sister Cynthia Figueroa and

4   nephew Dave Figueroa.[1]  (Id. at 96-102.)  The Board then took a recess and rendered its

5   decision denying petitioner parole.  (Id. at 103-110.)

## LEGAL CLAIMS

7       Petitioner does not challenge the legality of his conviction or sentence, but instead

8   challenges the state court decisions upholding the Board's determination.  Petitioner

9   asserts the following claims for habeas relief:  (1) the Board's decision violated

10  petitioner's right to due process because there is not "some evidence" that petitioner poses

11  a risk of danger to society; (2) the Board violated petitioner's constitutionally protected

12  liberty interest in release on parole; (3) the Board's failure to consider all relevant post-

13  conviction factors violated petitioner's due process right to a fair and meaningful hearing;

14  (4) the Board violated the Ex Post Facto, Due Process, and Equal Protection Clauses of

15  the United States Constitution by denying parole pursuant to a policy of "normally"

16  denying parole to all "term-to-life" prisoners; and (5) the Board violated petitioner's right

17  to due process by allowing the nephew of the victim to testify at the parole suitability

18  hearing.

## DISCUSSION

20  **A.    Standard of Review**

21      Because this case involves a federal habeas corpus challenge to a state parole

22  eligibility decision, the applicable standard is contained in the Antiterrorism and Effective

23  Death Penalty Act of 1996 (AEDPA).  McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir.

24  2002).  Under AEDPA, a district court may not grant habeas relief unless the state court's

25  adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an

---

27      [1] It is not entirely clear from the record whether Dave Figueroa is the victim's
    brother or nephew, as he referred to the victim as both his "brother" and his "uncle."
28  (Id. at 100-102.)

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Menchaca_order.wpd

1  unreasonable application of, clearly established Federal law, as determined by the

2  Supreme Court of the United States; or (2) resulted in a decision that was based on an

3  unreasonable determination of the facts in light of the evidence presented in the State

4  court proceeding."  28 U.S.C. § 2254(d);  Williams v. Taylor, 529 U.S. 362, 412 (2000).

5  A federal court must presume the correctness of the state court's factual findings.  28

6  U.S.C. § 2254(e)(1).

7         Where, as here, the highest state court to reach the merits issued a summary

8  opinion which does not explain the rationale of its decision, federal court review under §

9  2254(d) is of the last state court opinion to reach the merits.  Bains v. Cambra, 204 F.3d

10 964, 970-71, 973-78 (9th Cir. 2000).  In this case, the last state court opinion to address

11 the merits of petitioner's claim is that of the California superior court.

12 **B.**     **Analysis of Legal Claims**

13        1.     "Some Evidence" Supporting Denial of Parole

14        Petitioner claims that he was denied due process because he has a liberty interest in

15 release on parole, and the Board's decision finding petitioner unsuitable for parole was

16 not supported by "some evidence" that he would pose an unreasonable risk of danger to

17 society or a threat to public safety if released from prison.  (Pet. Ex. A at 1, 16.)

18 Respondent argues that California inmates do not have a federally protected liberty

19 interest in parole release.  (Resp't at 2-3.)

20        Respondent's argument has been foreclosed by the controlling Ninth Circuit

21 authority, which has held that California prisoners have a constitutionally protected

22 liberty interest in release on parole, and therefore they cannot be denied a parole date

23 without adequate procedural protections necessary to satisfy due process.  See Irons v.

24 Carey, 505 F.3d 846, 850 (9th Cir. 2007).  The Supreme Court has clearly established that

25 a parole board's decision deprives a prisoner of due process if the board's decision is not

26 supported by "some evidence in the record," or is "otherwise arbitrary."  Sass v.

27 California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some

28 evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S.

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Menchaca_order.wpd

5

1   445, 454-55 (1985)).  The "some evidence" standard identified in <u>Hill</u> is clearly

2   established federal law in the parole context for AEDPA purposes.  <u>Sass</u>, 461 F.3d at

3   1128-29.  Additionally, the evidence underlying the board's decision must have some

4   indicia of reliability.  <u>McQuillion</u>, 306 F.3d at 904; <u>Jancsek v. Oregon Bd. of Parole</u>, 833

5   F.2d 1389, 1390 (9th Cir. 1987).  Accordingly, if the board's determination of parole

6   suitability is to satisfy due process, there must be some evidence, with some indicia of

7   reliability, to support the decision.  <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir.

8   2005); <u>McQuillion</u>, 306 F.3d at 904.

9         When assessing whether a state parole board's suitability determination was

10  supported by "some evidence," the court's analysis is framed by the statutes and

11  regulations governing parole suitability determinations in the relevant state.  <u>Irons</u>, 505

12  F.3d at 850.  Accordingly, in California, the court must look to California law to

13  determine the findings that are necessary to deem a prisoner unsuitable for parole, and

14  then must review the record in order to determine whether the state court decision

15  constituted an unreasonable application of the "some evidence" principle.  <u>Id.</u>

16        California law provides that a parole date is to be granted unless it is determined

17  "that the gravity of the current convicted offense or offenses, or the timing and gravity of

18  current or past convicted offense or offenses, is such that consideration of the public

19  safety requires a more lengthy period of incarceration . . . ."  Cal. Penal Code § 3041(b).

20  The California Code of Regulations sets out the factors showing suitability or

21  unsuitability for parole that the Board is required to consider.  <u>See</u> 15 Cal. Code Regs. tit.

22  15 § 2402(b).  These include "[a]ll relevant, reliable information available," such as:

23        . . . the circumstances of the prisoner's social history; past and present mental
          state; past criminal history, including involvement in other criminal
24        misconduct which is reliably documented; the base and other commitment
          offenses, including behavior before, during and after the crime; past and
25        present attitude toward the crime; any conditions of treatment or control,
          including the use of special conditions under which the prisoner may safely
26        be released to the community; and any other information which bears on the
          prisoner's suitability for release.  Circumstances which taken alone may not
27        firmly establish unsuitability for parole may contribute to a pattern which
          results in finding of unsuitability.

28  <u>Id.</u>

1    Circumstances tending to show unsuitability for parole include the nature of the

2  commitment offense and whether "[t]he prisoner committed the offense in an especially

3  heinous, atrocious or cruel manner." Id. at (c).  This includes consideration of whether

4  "[t]he offense was carried out in a dispassionate and calculated manner," whether the

5  victim was "abused, defiled or mutilated during or after the offense," whether "[t]he

6  offense was carried out in a manner which demonstrated an exceptionally callous

7  disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or

8  very trivial in relation to the offense." Id.  Other circumstances tending to show

9  unsuitability for parole are a previous record of violence, an unstable social history,

10  previous sadistic sexual offenses, a history of severe mental health problems related to the

11  offense, and serious misconduct in prison or jail. Id.

12    Conversely, circumstances tending to support a finding of suitability for parole

13  include:  no juvenile record; a stable social history; signs of remorse; that the crime was

14  committed as a result of significant stress in the prisoner's life; a lack of criminal history;

15  a reduced possibility of recidivism due to the prisoner's present age; that the prisoner has

16  made realistic plans for release or has developed marketable skills that can be put to use

17  upon release; and that the prisoner's institutional activities indicate an enhanced ability to

18  function within the law upon release. See id. at (d).

19    In making its determination, the Board analyzed numerous factors, weighing both

20  for and against suitability for parole.  The Board began by reviewing the commitment

21  offense, and determined that the offense showed an exceptionally callous disregard for

22  human suffering, with the victim receiving fifteen stab wounds, some being as deep as

23  four and a half inches.  (Resp't Ex. 2 at 103.)  Moreover, the Board determined that the

24  motive for the murder, road rage, was trivial compared to the loss of a human life.  (Id. at

25  104.)  The Board noted that petitioner has a record of violence and assaultive behavior, an

26  escalating pattern of criminal conduct, and that he had failed previous grants of probation

27  and parole and "cannot be counted upon to avoid criminality." (Id. at 106)  Accordingly,

28  the Board found that petitioner has "failed from society's previous attempts to correct

1    [his] criminality."  (Id.)  The Board also noted that petitioner had not sufficiently

2    participated in self-help programs, specifically that his attendance in Alcoholics

3    Anonymous (AA) was sporadic and needed to be sustained, especially in light of the role

4    that alcohol played in his criminal history.  (Id.)  Moreover, the Board noted that

5    petitioner did not have verified contacts with AA outside of prison.  (Id. at 106-08.)

6    Finally, the Board pointed out the fact that petitioner received three drug-related CDC

7    115s since his last parole hearing, which demonstrated serious misconduct while in

8    prison.  (Id. at 106-07.)

9         With respect to suitability factors, the Board did note that petitioner had been

10   active in a number of programs, including participation in: an anger management

11   program; various chapters and elements of the TRUST program, which teaches

12   responsibility by utilizing sociological training; Alcoholics Anonymous; the Overcomers

13   Outreach, a 12-step recovery program; a number of courses in the San Quentin College

14   Program; and various other self-help workshops.  (Resp't Ex. 2 at 46-50.)  However, the

15   Board also found that petitioner's gains were recent, and petitioner needed to demonstrate

16   an ability to maintain the gains over an extended period of time.  (Id. at 108.)  Thus, the

17   Board considered numerous factors showing petitioner's parole suitability, but determined

18   that they were outweighed by factors showing unsuitability and parole was denied.

19        The California superior court reviewed the Board's decision and concluded that

20   "the crime itself, and [p]etitioner's 115s, appear[ed] to show unsuitability under the

21   Board's standards" and as a result denied the state habeas petition.  This court cannot say

22   that the state court was unreasonable in concluding there is some evidence to support the

23   Board's decision that petitioner would be a danger to society if released.  First, and

24   perhaps most importantly in light of current Ninth Circuit authority, at the time of the

25   challenged parole suitability hearing, petitioner had not yet served the minimum number

26

27

28

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Menchaca_order.wpd

1  of years required under his sixteen years-to-life sentence.[2]  Pursuant to the holding in

2  Irons, petitioner's right to due process was not violated when he was deemed unsuitable

3  for parole prior to the expiration of his minimum term.  See Irons, 505 F.3d at 665.

4  Further, the Board's decision that petitioner was unsuitable for parole and that his release

5  would unreasonably endanger public safety was supported by "some evidence" that bore

6  "indicia of reliability."  See Jancsek, 833 F.2d at 1390.  A review of the record reflects

7  that the Board relied in large part on:  the circumstances of petitioner's offense of

8  conviction; his escalating pattern of criminal conduct; his history of substance abuse; the

9  trivial motive for the murder; and the three CDC 115s petitioner received since his last

10  parole hearing.  These factors constitute "some evidence" supporting the Board's decision

11  to deny parole where petitioner has not served the minimum term required by his

12  sentence.  See Sass, 469 F.3d at 1129;  Irons, 505 F.3d at 665.

13      This court also notes the Ninth Circuit in Biggs v. Terhune expressed the concern

14  that "over time" the Board's "continued reliance in the future on an unchanging factor,

15  the circumstance of the offense and conduct prior to imprisonment" would "raise serious

16  questions involving his liberty interest in parole."  334 F.3d 910, 916 (9th Cir. 2003).

17  However, as noted above, petitioner had not served his minimum term of sixteen years to

18  implicate the concerns raised in Biggs.  See Irons, 479 F.3d at 661.  Thus, this case has

19  not yet reached the point where a continued reliance on an unchanging factor such as the

20  circumstances of the offense in denying parole has resulted in a due process violation.

21  Moreover, other factors found to be present, besides the circumstances of the offense and

22  petitioner's pre-offense behavior, supported the Board's decision.  Accordingly, petitioner

23  is not entitled to relief on his claim that the Board's failure to find him suitable for parole

24

25

26  _____

27      [2] Petitioner was convicted in January 1992, and his parole was denied in May 2006.
    Even with credit for 378 days of time served at the time of sentencing, his minimum

28  sentence ran until 2007.

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Menchaca_order.wpd

1   at the May 12, 2006 hearing violated his right to due process.[3]  See Sass, 461 F.3d at

2   1129; Irons, 505 F.3d at 664-65.

3           2.          Board Policy of Denying Parole to All Term-to-Life Prisoners

4           Petitioner claims that the Board violated due process and equal protection by

5   denying him parole pursuant to a policy of "normally" denying parole to all "term-to-life"

6   prisoners, which he also claims is an unconstitutional ex post facto enhancement of the

7   indeterminate sentence imposed by the sentencing court.  (Pet. Ex. A at 21.)

8           Petitioner has failed to provide any evidence or authority to support this claim.

9   Even if petitioner could show the existence of such a policy, the transcript of the parole

10  suitability hearing and the decision here show that the Board considered petitioner's

11  suitability on an individual basis and in considerable detail.  (See Resp't Ex. 2).  The

12  record as a whole reflects an individualized treatment of petitioner's case.  As described

13  above, the Board's decision was based on more than petitioner's commitment offense and

14  his status as a convicted murderer serving an indeterminate sentence.  Accordingly, this

15  claim fails.

16          3.          Statement by Nephew of the Victim

17          Petitioner claims that a family member of the victim, Dave Figueroa, incorrectly

18  identified himself as the victim's brother, rather than his nephew, in order to "testify" as

19  an immediate family member at petitioner's parole hearing.  (Pet. Ex. A at 27-28.)

20  Petitioner alleges that Dave Figueroa "perjured" himself by giving this false information

21  to the Board.  (Id. at 27.)  As a result, petitioner claims that his due process was violated

22  because the Board used Dave Figueroa's statement as part of "some evidence" to support

23  a finding of unsuitability.  (Id.)  However, the issue of whether Dave Figueroa is the

24  victim's brother or nephew is irrelevant because even if Dave Figueroa is not part of the

25

26

27          [3] Because the Board considered petitioner's suitability factors in its parole
    determination, petitioner's claim that the Board failed to consider his post-conviction
28  factors is without merit.  See supra p. 8.

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Menchaca_order.wpd

10

1   victim's "immediate family"[4] as petitioner contends, the California Penal Code allows the

2   Board to consider statements by "designated representatives of the victim or next of kin"

3   that "adequately and reasonably express his, her, or their views concerning the prisoner

4   and the case . . . ." Cal. Penal Code § 3043(b)(1), (d).  A designated representative may

5   be any adult person selected by the victim or the victim's family.  Id. at (c).  Thus,

6   whether or not Dave Figueroa is the victim's brother, he could nonetheless make a

7   statement as a designated representative of Cynthia Figueroa, the victim's sister who was

8   also at the hearing.

9        Even if the Board erred in allowing Dave Figueroa to make a statement, the error

10  does not rise to the level of a due process violation.  As noted above, the state court's

11  denial of petitioner's claim must be contrary to or an unreasonable application of "clearly

12  established" precedent from the Supreme Court.  28 U.S.C. § 2254(d)(1).  Petitioner has

13  cited to no clearly established Supreme Court precedent which creates a constitutionally

14  protected liberty interest in the number or categories of persons who may appear on a

15  victim's behalf at a parole suitability hearing.  Nor has he shown that the statements of the

16  victim's family deprived him of a fair and impartial hearing.  As previously discussed, the

17  Board's decision was supported by the evidence in the record.

**CONCLUSION**

18

19       Because (1) petitioner has not served his minimum term at the time of the hearing,

20  (2) the record contains some evidence to support the Board's finding that petitioner would

21  present an unreasonable risk of danger to society if released, and (3) petitioner has made

22  an insufficient showing as to his entitlement to relief on other claims, the court finds that

23  the state court's determination was neither contrary to nor an unreasonable application of

24  clearly established Supreme Court precedent.  Nor can the court say it was based on an

25  unreasonable determination of the facts.

26

27       [4] "Immediate family" is defined as the victim's spouse, parent, grandparent, brother,
     sister, and children or grandchildren who are related by blood, marriage, or adoption.
28   Cal. Penal Code § 3043.3.

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Menchaca_order.wpd

1      Accordingly, the petition for a writ of habeas corpus is DENIED as to all claims.

2   The clerk shall terminate all pending motions and close the file.

3      IT IS SO ORDERED.

4   DATED: _____7/7/09_____

_Ronald M. Whyte_
RONALD M. WHYTE
United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Menchaca_order.wpd